[No. S023350. Nov. 2, 1992.]

COUNTY OF SANTA CLARA et al., Plaintiffs, Cross-defendants and Respondents, v.
DEPUTY SHERIFFS' ASSOCIATION OF SANTA CLARA COUNTY, INC., Defendant, Cross-complainant and Appellant;
SANTA CLARA COUNTY CORRECTIONAL PEACE OFFICERS ASSOCIATION et al., Interveners and Respondents.

**COUNSEL**

Carroll, Burdick & McDonough, Christopher D. Burdick, Kathleen M. Hansen and Larry F. Estrada for Defendant, Cross-complainant and Appellant.

Beeson, Tayer & Bodine and John Provost as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Steven M. Woodside, County Counsel, Susan Levenberg, Chief Deputy County Counsel, James Rumble, Deputy County Counsel, Remcho, Johansen & Purcell, Robin B. Johansen, Julie M. Randolph and Philip C. Monrad for Plaintiffs, Cross-defendants and Respondents.

Lloyd M. Harmon, Jr., County Counsel (San Diego), Kelvin H. Booty, Jr., County Counsel (Alameda) and Jeffrey L. Kuhn, County Counsel (Madera), as Amici Curiae on behalf of Plaintiffs, Cross-defendant and Respondents.

Philip John Crawford and Louis D. Silver for Interveners and Respondents.

## OPINION

MOSK, J.—The issues we are asked to decide in this case are whether the Director of the Santa Clara County Department of Correction (department) violated chapter 4.5 of the Penal Code[1] (§ 830 et seq.; hereafter chapter 4.5), by conferring "limited peace officer status" on custodial officers employed at the county jail[2] and, if so, whether his action was nevertheless authorized by the home rule provisions of the California Constitution. (Cal. Const., art. XI, §§ 4, 7.)

I

Prior to 1988, the jail facilities in Santa Clara County (county) were supervised by the sheriff. On June 6 of that year, the voters ratified a charter provision transferring control of the jails to the department, an agency previously created by the board of supervisors (board) pursuant to Government Code section 23013.[3] The department is responsible for the detention of 4,600 prisoners in 5 facilities. It employs correction deputies, who have

---

[1] All further references are to the Penal Code unless otherwise noted.

[2] In this opinion, we refer to the employees involved as "custodial officers," the designation used in section 831.

[3] Section 23013 of the Government Code provides in part, "The board of supervisors of any county may, by resolution, establish a department of corrections, to be headed by an officer appointed by the board, which shall have jurisdiction over all county functions, personnel, and facilities, or so many as the board names in its resolution, relating to institutional punishment, care, treatment, and rehabilitation of prisoners, including, but not limited to, the county jail and industrial farms and road camps, their functions and personnel."

been deputized by the sheriff and are classified as "peace officers" (§ 830.1)[4] and who may carry firearms. The department also employs "custodial officers," who are expressly denied peace officer status by section 831 and are prohibited by that provision from carrying firearms.[5]

Following the transfer of jurisdiction over the jail facilities to the department, the correction deputies employed at the jail, who had previously been under the supervision of the sheriff, were reassigned to the department. They performed all the functions for which armed officers were needed at the jail, such as the transportation of prisoners and the pursuit of escaped prisoners, and they supervised the custodial officers. Thus, although they were employees of the department, they also had the full power of peace officers. They retain a contractual right to transfer to the sheriff's department as vacancies arise, and by June 1990, a substantial number had taken advantage of this right.

The number of correction deputies fell below that required by state law, and the director proposed to confer limited peace officer status on the custodial officers so that they could carry weapons in the performance of certain duties which require that the employee be armed. According to a declaration filed by the director, the custodial officers were qualified in the use of firearms under the same standards as those used by the sheriff's department, and in fact exceeded those standards, and they received the same training as correctional deputies in the law of arrest and search and seizure. The latter claim is denied by the appellant, the Deputy Sheriffs' Association of Santa Clara County, Inc. (DSA), an organization representing the correction deputies.

The DSA objected to the proposal to confer limited peace officer powers on the custodial officers, claiming that section 831 prohibits the director from doing so. That provision states, as we have seen, that a custodial officer is employed to maintain custody of prisoners and perform other functions in relation thereto, and that he or she is not a peace officer and has no right to carry firearms in the performance of his or her duties.

---

[4]Section 830.1 provides in part, "(a) Any sheriff, undersheriff, or deputy sheriff employed in that capacity, of a county . . . is a peace officer."

[5]Section 831 provides in part, "(a) A custodial officer is a public officer, *not a peace officer*, employed by a law enforcement agency of a city or county who has the authority and responsibility for maintaining custody of prisoners and performs tasks related to the operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safekeeping or for the specific purpose of serving a sentence therein.

"(b) A custodial officer shall have no right to carry or possess firearms in the performance of his or her prescribed duties." (Italics added.)

The county and the director (hereafter referred to collectively as the county) filed an action for declaratory relief naming the DSA as defendant. The DSA and its president cross-complained, requesting declaratory relief and an injunction. The bargaining unit representing the custodial officers and two individuals classified as such officers intervened in the action.

The trial court determined that, although the Legislature had preempted the field relating to peace officer status, training, and power to carry firearms or to make arrests, a county which created a department of corrections pursuant to section 23013 of the Government Code had thereby divested the sheriff of his law enforcement responsibilities with respect to a county jail, and that, of necessity, such a county must have the power to bestow some limited peace officer status on employees of a department of corrections. The court found that the employees in question were custodial officers as defined by section 831, but that they could fill the peace officer positions at the correctional facility so long as they were trained in the use of firearms in accordance with state requirements. Thereafter, the director conferred limited peace officer status on the custodial officers.[6] The trial court refused to stay the judgment, and the Court of Appeal denied DSA's petition for a writ of mandate. The DSA appealed from the judgment; the Court of Appeal affirmed.

II

Article XI, section 7 of the California Constitution provides, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." If such a conflict exists, a court must decide whether the action of the local entity prevails because it relates to a matter of purely local concern, or whether the statute is paramount because it involves an issue of statewide concern. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) Our first inquiry, therefore, is whether the director's action conflicts with state law. Because we shall conclude that it does, we must determine whether his conduct was nevertheless authorized under the home rule provisions of the California Constitution. On this issue, we hold that the subject of who may exercise the

---

[6]The custodial officers were granted peace officer status in the performance of the following duties: (1) transporting and supervising inmates outside correctional facilities; (2) carrying out duties relating to facility entry and perimeter and internal security; (3) investigating crimes and pursuing escapees; (4) responding to emergency situations declared by the director or his designees; (5) operating emergency vehicles to carry out the functions described above; and (6) temporarily substituting for correction deputies on sick leave, vacation or other relief time.

powers of a peace officer is one of statewide concern, and that, therefore, the director exceeded his power in granting peace officer status to custodial officers.[7]

### III

█ Our examination of the statutory scheme relating to the acquisition of peace officer status by government employees and the legislative history of those provisions persuades us that the Legislature intended to prohibit county authorities from conferring that status on employees not designated in chapter 4.5. Since the director of a county jail facility is not authorized by that provision to designate county employees as peace officers, the director's action violated the provisions of chapter 4.5.

Prior to 1968, the designation of peace officers and the description of their powers were dispersed throughout the codes. In April of that year, the Senate declared by resolution that it was essential the law be clear with respect to "who can act as peace officers, and where, and for what purposes," and it requested a study of "peace officers' powers, including the questions of the scope of such powers, the types of officers who should exercise them, and the purposes for which, and the geographical areas in which, they may be exercised . . . ." (Sen. Res. No. 163 (1967 Reg. Sess.) Thereafter, it enacted chapter 4.5, the purpose of which was to "define peace officers, the extent of their jurisdiction, and the nature and scope of their authority, powers and duties . . . ." (Stats. 1968, ch. 1222, § 79, p. 2331.)

Section 830 provides in part, "Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and *notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer.*" (Italics added.)

This declaration is followed by provisions which specify dozens of classifications of government employees as peace officers. As to some classifications, chapter 4.5 describes the powers the peace officer may exercise (e.g., § 830.5, subd. (a)). Other provisions contain limitations on the exercise

---

[7]We reject the county's claim that the DSA is collaterally estopped from raising these issues because it failed to appeal a trial court judgment in a prior proceeding. (Santa Clara Super. Ct. No. 686871.) The issue there was entirely different, i.e., whether DSA members assigned to the department were eligible for state-certified peace officer training. Although the trial court's statement of decision contains some broad comments regarding the powers of the county and the director, these were unnecessary to the judgment and cannot support a claim of collateral estoppel. (*In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071, 1082-1083 [225 Cal.Rptr. 219]; Rest.2d Judgments, § 27, com. h.)

of such powers. For example, section 830.37, subdivision (b) provides that members of an arson-investigating unit employed by a fire department are peace officers if their primary duty is the enforcement of laws relating to fire prevention or fire suppression. Section 830.4, subdivision (e) declares that security officers of Hastings College of the Law have the authority of peace officers only within the City and County of San Francisco. Some persons classified as peace officers may carry firearms only if authorized to do so by their employing agency. (§§ 830.31-830.37.) Chapter 4.5 also contains provisions stating that certain persons are not peace officers (such as persons employed in the State Banking Department) and, although they have a peace officer's powers of arrest, they may not carry firearms. (§ 830.11, subds. (a), (b).) Similarly, as we have seen, section 831 provides that a custodial officer is not a peace officer and has no right to carry a firearm in the performance of his or her duties.

Two attempts were made in the Legislature to grant broader powers to custodial officers. In 1977, a bill was enacted to give custodial officers full peace officer powers (Sen. Bill No. 1244), but it was vetoed by the Governor. (6 Sen. J. (1977-1978 Reg. Sess.) p. 11414.) Another bill, introduced in 1980, would also have granted peace officer status to such officers, but it failed to get out of committee. (Assem. Bill No. 1997; 2 Assem. Final Hist. (Reg. Sess. 1979-1980), p. 1190.)

The Legislature's declared impetus for enactment of section 4.5 was to specify in one chapter of the code the government employees who can act as peace officers, and in some cases to set forth the powers they may exercise. The statement in section 830 that "notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer," spells out that goal. The provisions which follow, naming some classifications of employees as peace officers, providing that other employees are not peace officers but may exercise some of the functions of such officers under certain circumstances, and denying peace officer status or the right to carry firearms to others, provide a strong indication that the director's designation of custodial employees as peace officers, conflicts with the legislative scheme.[8]

Further support for this conclusion arises from the fact that section 831.5 contains an exception to section 831. It provides that custodial officers in

[8]Our conclusion that the Legislature intended to limit the status of peace officers to the employees named in chapter 4.5 is not altered by the fact that it failed to transfer to chapter 4.5 two provisions designating peace officers, one contained in the Government Code and the other in the Welfare and Institutions Code. Section 6778 of the Welfare and Institutions Code, enacted in 1967 (Stats. 1967, ch. 1667, § 37, p. 4107), one year before chapter 4.5 was enacted (Stats. 1968, ch. 1222, § 1, p. 2303) and amended around the same time as chapter 4.5 was added (Stats. 1968, ch. 1374, § 110, p. 2685), provides that mental health counselors have the powers of a peace officer. The same powers are granted to the director and the civil executive

San Diego County and Fresno County, or a county with a population of 425,000 or less are not peace officers but they have the right to carry firearms while performing certain specific functions, provided that they do so under the direction of the sheriff or the chief of police. Thus, the Legislature has expressed its intent to confine a custodial officer's right to carry firearms to certain counties, in the performance of strictly limited duties, and under the direction of a sheriff or the chief of police. Even custodial officers who come within section 831.5 are not peace officers. The director's action here, in conferring that status on employees of a county which is not designated in section 831.5, and in allowing them to carry firearms to perform functions not specified in the section, clearly conflicts with the Legislature's intention.[9]

A recent amendment to the Penal Code provides additional reinforcement for our conclusion. Sections 13540 to 13542 set forth a procedure by which employees not classified in chapter 4.5 as peace officers may request the Commission on Peace Officer Standards and Training (hereafter POST) to undertake a feasibility study of duties and responsibilities and to make a recommendation to the Legislature whether peace officer status should be granted. These provisions imply that a county may not bypass the procedure for acquiring peace officer status by its unilateral action.[10]

■ The county urges, however, that there is no conflict between chapter 4.5 and the director's action. It relies heavily on the general language of section 23013 of the Government Code. As noted above, that provision authorizes a board of supervisors to establish a department of corrections "to be headed by an officer appointed by the board" and to grant to the department "*all* county functions, personnel, and facilities . . . relating to institutional punishment, care, treatment, and rehabilitation of prisoners, including . . . the county jail . . . [its] functions and personnel." (Italics

officers of the State Department of General Services in section 14614 of the Government Code, passed in 1965. (Stats. 1965, ch. 371, § 179, p. 1536.) Nevertheless, we agree with the DSA's assertion that the Legislature intended that chapter 4.5 be the exclusive source of peace officer powers.

The Legislature's intention to delete peace officer designations from the various provisions scattered throughout the codes, to combine them in chapter 4.5, and to render those designations the sole source of peace officer status is so clear that the failure to include these two provisions in chapter 4.5 must be attributed to legislative oversight.

[9]Section 831.5 allows custodial officers to carry firearms to transport prisoners; guard hospitalized prisoners; suppress jail riots, lynchings and escapes; or to perform rescues in or about a detention facility. (Cf. fn. 6, *ante*, p. 878.)

[10]The county's assertion that the feasibility study authorized by these sections is limited to individuals who request peace officer status rather than to an appointing authority or agency is without merit. The regulations issued by POST to implement the authority granted make it clear that the study may be undertaken at the request of either an individual employee or a government entity. (Cal. Code Regs., tit. 11, § 1019, subds. (a)(2), (c)(1), (g)(1).)

added.) According to the county, the section implies that the director may confer peace officer status on custodial officers because the duties of the department, as set forth in the section, require enforced incarceration of prisoners, armed force is necessary to accomplish this, and only peace officers may carry firearms. That is, since this statute transfers responsibility for the punishment, care, treatment and rehabilitation of prisoners, it also transfers authority to use peace officers to meet those responsibilities. The county relies on cases holding that if a public officer is charged by statute with carrying out a duty, he or she has the additional powers that may be fairly implied from the statute to accomplish the task expressly granted. (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324]; *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245 [164 Cal.Rptr. 203].)

We are not persuaded by this argument. Although section 23013 of the Government Code supplies the authority for the county to appoint a director to run the county jails, and the director may impliedly utilize peace officers as is necessary in carrying out his or her duties, it does not authorize the director to confer peace officer status on custodial officers. Until the trial court's judgment in the present case, the director employed sheriff's deputies, who are peace officers, to perform the jobs at the jail which required the use of firearms. The elaborate statutory scheme setting forth who is a peace officer and who is not, and limiting the powers they may exercise, would be meaningless if a local authority could grant such status to an employee not referred to in chapter 4.5 on the ground that the employee was assigned to perform duties which require the carrying of firearms. The Legislature recognized in section 831 that a custodial officer may be required to use force at times, since it provided in subdivision (f) that such an employee may "use reasonable force in establishing and maintaining custody of persons delivered to him or her by a law enforcement officer." Nonetheless, in subdivision (b) of that section, it prohibited the use of firearms in carrying out that duty.

The county advances an additional justification for its claim that section 23013 of the Government Code does not conflict with section 831. It argues that the provisions of section 831 are "descriptive, not prohibitory," in that, while they provide that a custodial officer is not a peace officer, they do not prohibit properly trained custodial officers from becoming peace officers. Whether custodial officers may be deputized by the proper authorities to become peace officers is not the issue here.[11] Rather, the issue is whether the director of a department of corrections created pursuant to section 23013 of

---

[11]The parties appear to agree that the sheriff may deputize custodial officers as peace officers under appropriate circumstances.

the Government Code may do so. We note that the Attorney General has also concluded section 23013 does not empower the officer in charge of a county department of corrections to authorize custodial officers to carry firearms. (72 Ops.Atty.Gen. 103, 113-115 (1989).)

Moreover, even if we were to agree with the county that section 23013 of the Government Code impliedly authorizes custodial officers to act as peace officers, we would still be compelled to conclude that the director's action was improper. Under settled rules of construction, when there is a conflict between two provisions, the later statute prevails over one passed earlier (*Stafford* v. *L.A. etc. Retirement Board* (1954) 42 Cal.2d 795, 798 [270 P.2d 12]; see also *Woods* v. *Young* (1991) 53 Cal.3d 315, 324 [279 Cal.Rptr. 613, 807 P.2d 455]), and a specific enactment governs over a more general one (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147]; *Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 735-736 [108 P.2d 443]). Section 831 is unquestionably more specific regarding the peace officer status of custodial officers than the Government Code provision, and it was enacted in 1981, some 24 years after section 23013 was adopted. (Stats. 1981, ch. 987, § 2, p. 3826; Stats. 1957, ch. 243, § 1, p. 898.)

## IV

In view of our conclusion that the director's conduct conflicts with chapter 4.5, we must determine whether the matter of conferring peace officer status on custodial officers is one of statewide concern. Section 4, subdivision (f) of article XI of the California Constitution declares that a county's charter must provide that its governing body shall specify the "powers, duties, qualifications and compensation" of county employees. However, as to matters of statewide concern, as we point out above, these provisions " 'remain subject to and controlled by applicable general state laws regardless of the provisions of their charters.' " (*Baggett* v. *Gates, supra*, 32 Cal.3d at p. 136, quoting *Bishop* v. *City of San Jose, supra*, 1 Cal.3d at p. 61; see also *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 315-316 [152 Cal.Rptr. 903, 591 P.2d 1]; *Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1385-1386 [237 Cal.Rptr. 920].)

The questions whether government employees may act as peace officers and whether they may carry firearms in the performance of their law enforcement functions are clearly matters of statewide concern. (See e.g., *Los Angeles County Safety Police Assn.* v. *County of Los Angeles, supra*, 192 Cal.App.3d at pp. 1386-1387.) In the present case, the director has authorized custodial officers to carry firearms while pursuing escapees, transporting prisoners, operating emergency vehicles, and acting as substitutes for

correction deputies who are absent. The state has an important interest in the designation and qualifications of employees who perform duties that have such a significant impact on the public.

Although what constitutes a matter of statewide concern is ultimately for the courts to decide, " 'great weight' " is accorded to the Legislature's evaluation of the question. (*Baggett* v. *Gates*, *supra*, 32 Cal.3d at p. 136.) As concluded above, the Legislature has made it clear in section 4.5 that only the employees specified in that provision may act as peace officers.

The county avoids explicitly asserting that the question of who shall be a peace officer is not a matter of statewide concern. Rather, it claims that the provisions of chapter 4.5 and the director's actions may be reconciled because the Legislature has indicated its intention to leave "much to local discretion" in determining peace officer status. It points out that the county may decide how many deputy sheriffs are needed in the county, the nature of their duties and the manner in which they are deployed, and whether to staff a jail largely with custodial officers, using the minimum number of peace officers required by statute, or whether to employ only peace officers. Furthermore, under sections 830.31 to 830.37, a local appointing agency may determine whether certain classifications of peace officers should carry firearms, and the terms and conditions under which weapons may be carried.

But the fact that counties may determine how to utilize employees who are designated as peace officers by state law and may determine whether and under what circumstances certain classifications of peace officers may carry firearms does not indicate that the Legislature intended to leave to local discretion the question of who shall be a peace officer.

Finally, the county asserts that the Legislature must have intended to allow custodial officers to enjoy peace officer status because some provisions in chapter 4.5 confer such status on employees who perform custodial work in certain types of detention facilities. (See § 830.5, subd. (b) [providing that certain employees, including an employee who has custodial responsibilities in an institution operated by a probation department, are peace officers]; § 830.55 [conferring peace officer status on officers who maintain custody of parole violators or those awaiting parole in a detention facility operated by the county under contract with the state].) If anything, the fact that the Legislature saw fit to classify as peace officers some employees who do work related to the custody of prisoners but denied it to custodial officers covered by section 831 only emphasizes its intention to limit the classification of employees working in detention facilities who are authorized to be peace officers.

The authorities relied on by the county in support of its position are inapposite. *Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789 [251 Cal.Rptr. 444] involved the question whether the transfer of power over county jail facilities from the sheriff to the department pursuant to section 23013 of the Government Code was valid. The appellate court upheld the transfer. In the course of its discussion, the court merely stated by way of dictum that "it is not clear as a matter of law that persons not explicitly listed in the Penal Code provisions may not be peace officers." (*Beck, supra,* 204 Cal.App.3d at p. 804.)

In *Boxx* v. *Board of Administration* (1980) 114 Cal.App.3d 79 [170 Cal.Rptr. 538], the issue was whether a patrolman for the Los Angeles Housing Authority was a "local safety member" of the Public Employees' Retirement System for purposes of disability retirement. Such employees are peace officers under section 830.4, but are required to be employed by a police department and engaged in active law enforcement. The court found that both requirements were met. In the course of its discussion it stated that whether the plaintiff was a "local policeman" depended on whether he was engaged in active law enforcement rather than on whether he was employed by a police department. This statement is not contrary to our holding. Moreover, section 830 declares that "[t]he restriction of peace officer functions of any public officer or employee shall not affect his or her status for purposes of retirement."

The county's final assertion is that it cannot operate the jail facilities if it is powerless to confer peace officer status on custodial officers. The director states in a declaration that at least 150 peace officers are necessary to carry out the duties that peace officers must perform at the jail facilities; that of the 276 sheriff's deputies transferred to the department upon its formation, only 122 remain; and that if he cannot confer peace officer status on custodial officers, he would not have enough personnel to carry out duties that only peace officers may perform. Furthermore, he declares, efficient administration of the department requires that he have the ability to transfer custodial officers from post to post, and that custodial officers be available to replace absent correction deputies.[12]

According to the county, the DSA's assertion that the director must rely on the sheriff to provide deputies to fulfill the peace officer functions at the jail is unworkable. If the sheriff refuses to assign his deputies to the department,

---

[12]The DSA contradicts some of these assertions. According to a declaration filed by a peace officer employed by the department, as of March 1992, there were 162 deputy sheriffs employed by the department, and because of a hiring freeze these employees may not transfer to the sheriff's department at present.

it is not clear whether the director can order him to do so; it is also unclear whether such deputies would be carried under the budget of the sheriff or the department, or which agency has the responsibility of overseeing them and disciplining them. As long as the jails are staffed by deputies of the sheriff, the director must assume that these employees owe their first loyalty to the sheriff and are only marking time at the department, awaiting the opportunity to transfer to the sheriff's department.[13]

Although we are not unsympathetic to these concerns, we doubt that their effect on the efficient operation of the department is as serious as the county contends. The department continues to employ correction deputies who are deputies of the sheriff to supervise custodial officers pursuant to section 831, subdivision (d).[14] Furthermore, for the approximately two years between 1988, when the department was formed to take over the jail facilities, and 1990, when the trial court rendered its judgment in this case, only correction deputies performed peace officer duties. Thus, the administrative questions of budget allocation, supervision, and discipline of peace officers employed at the jail who are deputized by the sheriff are familiar to the department; there is no indication in the record that their dual status as employees of the department and deputies of the sheriff has caused serious problems, aside from the fact that many have transferred to the sheriff's department. The Santa Clara County Code makes it clear that it is the director who supervises correction deputies at the jail facilities, rather than the sheriff.[15] Finally, there is nothing to indicate that the sheriff will refuse to assign the necessary deputized officers to staff the jail facilities.

The Legislature has made clear its intention in section 4.5 to retain the exclusive power to bestow peace officer status on state, county and city employees. Since that chapter does not authorize the director of a county jail facility to designate custodial officers as peace officers, the director's action cannot be sustained.

---

[13]Amici curiae in support of the county (i.e., the counties of San Diego, Alameda and Madera) assert that if the county must employ sheriff's deputies to perform duties at the jail which require the employees to carry a weapon, the cost of operating county jail facilities will increase dramatically.

[14]The section provides, "At any time 20 or more custodial officers are on duty, there shall be at least one peace officer, as described in section 830.1, on duty at the same time to supervise the performance of the custodial officers."

[15]Section A20-3 of the Santa Clara County Code provides that the sheriff has "no responsibility or liability in any respect for the training or supervision" of the deputy sheriffs transferred to the department. Section A20-41(d) provides, "Correction deputies, who by virtue of section A20-3 of this Code remain deputy sheriffs, shall be subject to the sole and exclusive supervision, direction, training and appointment of the director, who shall, in all instances and for all purposes, including *respondeat superior*, be the principal officer in charge rather than the sheriff."

V

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.