[No. A054641. First Dist., Div. Five. Jan. 11, 1993.]

CITY OF PETALUMA, Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1(a), this opinion is certified for publication with the exception of sections III.C. and III.D.

**COUNSEL**

Rudnansky & Thomsen, Richard R. Rudnansky and Leslie A. Thomsen for Plaintiff and Appellant.

Meyers, Nave, Riback & Silver, Steven R. Meyers and Steven T. Mattas as Amici Curiae on behalf of Plaintiff and Appellant.

James P. Botz, County Counsel, and Byron K. Toma, Deputy County Counsel, for Defendants and Respondents.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, Dennis Eckhart and Michael V. Hammang, Deputy Attorneys General, Hanson, Bridgett, Marcus, Vlahos & Rudy, Craig J. Cannizzo, Robert L. Rusky, Richards, Watson & Gershon and Harry L. Gershon as Amici Curiae on behalf of Defendants and Respondents.

OPINION

PETERSON, P. J.—

I. INTRODUCTION

In the published portions of this opinion, we address certain legal issues raised by a dispute between a city and a county, concerning the provision of emergency medical services to areas within the county, but outside the city.

II. PROCEDURAL HISTORY AND FACTS

The City of Petaluma (City) appeals from a judgment construing two sections of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (EMS Act) (Health & Saf. Code,[1] § 1797 et seq.) in favor of Sonoma County (County) and its Public Health Department Emergency Medical Services Agency.

The Legislature enacted section 1797 et seq. in 1980 (Stats. 1980, ch. 1260, § 7, p. 4261) to provide a statewide system for emergency medical services by establishing an Emergency Medical Services Authority to coordinate and integrate all state EMS activities (§ 1797.1). The act allowed each county to develop an EMS program and designate a local agency to administer it. (§§ 1797.200, 1797.94.)

Accordingly, County adopted an ordinance which purported to cover only its unincorporated areas, establishing an EMS agency within its department of public health. City historically provided prehospital emergency medical services within its municipal borders as well as in certain unincorporated county areas. In 1989, County authorized a private ambulance service to operate in a portion of the unincorporated area served by City. City objected.

In February 1991, City filed an amended complaint for declaratory relief contending it was entitled to continue its exclusive service to the unincorporated areas under section 1797.201 and, in the alternative, that section 1797.224 permitted County to create an exclusive operating area (§ 1797.85) and designate City as the exclusive EMS provider therein.

The parties filed a stipulation "re joint statement of facts and law." After a bench trial, the court issued a judgment and statement of decision. City filed a timely notice of appeal. We will affirm in part and reverse in part.

_____

[1] All subsequent statutory references are to the Health and Safety Code.

III. DISCUSSION

A. *Section 1797.201 Does Not Allow City to Continue Providing Exclusive Service Outside Its Borders in Areas Located in Its "Historic Service Area"*

 Section 1797.201 provides in relevant part, "Upon the request of a city or fire district that contracted for or provided, as of June 1, 1980, prehospital emergency medical services, a county shall enter into a written agreement with the city or fire district regarding the provision of prehospital emergency medical services for that city or fire district. Until such time that an agreement is reached, prehospital emergency medical services shall be continued at not less than the existing level, and the administration of prehospital EMS by cities and fire districts presently providing such services shall be retained by those cities and fire districts . . . ."

The parties agreed City had been providing prehospital emergency medical services since before June 1, 1980, both within its city limits and to a portion of the unincorporated county area. They also stipulated they had never executed an agreement "formally phasing in EMS Agency authority in the [unincorporated] area continuously served by the City." They expressly disagreed about "whether the Legislature, in adopting Section 1797.201, intended to permit city fire departments and fire districts with ambulance companies providing prehospital emergency medical care to be 'grandfathered-in' as sole providers of such services in areas outside city or district boundaries." Hence, the parties asked the trial court to determine "the scope of the area to be grandfathered in and to be exempt from EMS Agency regulation under Section 1797.201."

On this issue, the trial court decreed:

1. "Section 1797.201, referenced within . . . Section 1797.224, is not an alternative means of establishing exclusive operating areas, but merely a transitional provision, allowing cities and fire districts to work out an agreement with the local EMS Agency for the transfer and/or coordination of prehospital emergency medical service administration and regulation."

2. "Regarding Section 1797.201 . . . , the Court finds that a city or fire district falling under the provisions of Section 1797.201 may only continue its administration of prehospital emergency medical services (without regulation from the local EMS Agency) *within* its city or fire district boundaries, the area within its governmental jurisdiction, and not within what is otherwise the unincorporated portions of the County." (Italics in original.)

3. "[T]he area for which the city or fire district retains prehospital emergency medical services administration under Section 1797.201 does not constitute an 'exclusive operating area' as described within Section 1797.224."

City challenges these findings.[2]

■ Initially, we observe that our review of these findings is governed by the general principle that the interpretation and applicability of a statute is a question of law. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247.) "Where the statute is clear, the 'plain meaning' rule applies." (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) ■ The plain meaning of section 1797.201 supports the trial court's findings. It allows qualified cities to continue providing EMS services and retain administration thereof in the interim between its request for a written agreement with the county and the reaching of such an agreement. There is no evidence City has ever made such a request.[3] Section 1797.201 says nothing at all about exclusivity. It refers to the provision of services only "for that city or fire district," not for unincorporated county areas historically served or otherwise.

City contends the legislative history of section 1797.201 supports its position. ■ While legislative history may be considered in determining the purpose and meaning of a statute (*Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 486 [276 Cal.Rptr. 275]), "when the Legislature has stated the purpose of its enactment in unmistakable terms, we must apply the enactment in accordance with the legislative direction, and all other rules of construction must fall by the wayside. Speculation and reasoning as to legislative purpose must give way to expressed legislative purpose" (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [276 Cal.Rptr. 275]). "Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [196 Cal.Rptr. 38, 670 P.2d 1121], citation omitted.)

■ Section 1797.201 is part of an act, the stated intent of which is "to provide the state with a statewide system for emergency medical services by establishing within the Health and Welfare Agency the Emergency Medical

---

[2]City concedes its alleged "201" historic service area does not constitute a "224" (referring to §§ 1797.201 and 1797.224) exclusive operating area, but asserts "the administration it retains under [section] 1797.201 allows City to serve [its] historic service area exclusively and requires County to abide by City's historic exclusive service parameters."

[3]The statute does not say how long a city has to request a written agreement nor what happens if it does not. The validity of the trial court's finding herein, that "a city or fire district qualified to assert Section 1797.201 may indefinitely forbear from executing an agreement with the local EMS Agency," is not before this court on appeal.

Services Authority, which is responsible for the coordination and integration of all state activities concerning emergency medical services." (§ 1797.1) City points out that the Legislature also intended "to promote the development, accessibility, and provision of emergency medical services to the people of the State of California" (§ 1797.5), and that it is the policy of the State of California "to ensure the provision of effective and efficient emergency medical care" (§ 1797.6, subd. (a)). These underlying goals do not conflict with or undermine the intent expressed in section 1797.1, nor "show[] intent to give special protection to municipal providers" outside city limits.

City mistakenly equates "the existing level" of services referred to in section 1797.201 with an existing "service area" including territory under County jurisdiction. Given its "usual, ordinary import" (*Sutco Construction Co. v. Modesto High School Dist., supra*, 208 Cal.App.3d at p. 1228, citations omitted), the word "level" in this context obviously refers to such matters as the quantity of available staff, vehicles, equipment, etc., and/or to the type and character of available EMS services as constituting basic, advanced, or limited advanced life support (see §§ 1797.60, 1797.52, 1797.92), not to a particular geographical area in which such services are offered.

City makes much of a letter from the League of California Cities to then-state Senator John Garamendi, sponsor of the EMS Act, a week before the introduction of section 1797.201, and also of various changes in the section before its final enactment. Even if such evidence were arguably admissible and relevant (see *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764, fn. 10 [274 Cal.Rptr. 787, 799 P.2d 1220]; *American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 487-488 [255 Cal.Rptr. 280]) to establish legislative intent, despite the Legislature's statement thereof "in unmistakable terms" (*Milligan* v. *City of Laguna Beach, supra*, 34 Cal.3d at p. 831), there is simply nothing in any of those documents to even suggest the intent to "grandfather[]" into a statewide EMS system a permanent exclusive right to serve unincorporated county areas by existing municipal providers.

The letter asserted, in City's own words, "the authority of cities using city fire department paramedics to determine levels of service and staffing and to control administration except for medical direction." This only confirms that cities continuing to provide EMS services under county EMS plans wish to retain control over certain aspects of the program. The letter does not assert any city's right to be the only EMS provider in any particular geographical area; it does not mention exclusivity or historical service areas.

As for the various amendments to section 1797.201, City asserts they "did not change the basic thrust of the section, which was to provide continuity and control to existing city and fire district providers, and to maintain existing levels of service for the public good." Be that as it may, no version mentions explicitly, or impliedly concerns, exclusivity of EMS services provided in historical service areas.

City offers no evidentiary or logical basis for its contention that denying it the right to maintain its present exclusive service area would negatively impact the public and run counter to the policy and intent behind the EMS Act. Instead, it attacks one contention broader than that made by County (City may not, under any circumstances, provide any services outside its limits) and one which the trial court expressly rejected (County can require City, without the latter's concurrence, to respond to EMS calls in the unincorporated area).

Finally, City contends, as a matter of law, that it may provide municipal services outside its borders where to do so permits effective use of its resources and benefits its residents. Assuming arguendo the validity of this contention, City has shown no facts to support its application in this case.

B. *The Trial Court Erred in Interpreting the "[M]anner and [S]cope" Provision of Section 1797.224*

Section 1797.224, added to the EMS Act in 1984 (Stats. 1984, ch. 1349, § 3, p. 4779), provides, "A local EMS agency may create one or more exclusive operating areas[4] in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981. . . . Nothing in this section supersedes Section 1797.201."

The parties agreed that until 1989, when County authorized a private ambulance service to operate therein, City had been the exclusive provider of EMS services to the disputed unincorporated county areas without interruption since January 1, 1980. They disagreed as to whether section 1797.224's exemption from competitive bidding could be applied to any

---

[4]An exclusive operating area is "an EMS area or subarea defined by the emergency medical services plan for which a local EMS agency, upon the recommendation of a county, restricts operations to one or more emergency ambulance services or providers of limited advanced life support or advanced life support." (§ 1797.85.)

written agreement between them without a showing that City's historic service area was intended by County to be exclusively serviced by City. Hence, they asked the trial court to determine "the scope of the area which can be established as an exclusive operating area awarded to the City without competitive bidding pursuant to Section 1797.224."[5]

The trial court found "that the term 'same manner' in . . . Section 1797.224 requires the candidate for 'grandfathering' to have provided prehospital emergency medical services in identically the same manner as the candidate for 'grandfathering' proposes to provide prospectively thereafter, namely as the legally authorized exclusive provider of prehospital emergency medical services pursuant to appropriate governmental action prior to January 1, 1981. [¶] . . . While [City's] ambulance company appears to have met many of the criteria for possible 'grandfathering' into an exclusive operating area, the Court concurs with [County] that said ambulance company has not provided services in the required 'manner' to permit 'grandfathering' into an exclusive operating area without participation in a competitive process."

There is nothing in the plain meaning of the word "manner" or in the phrase "manner and scope" as used in section 1797.224 to recommend the trial court's harsh and restrictive reading. The statute refers to the manner in which services have been provided, not the manner in which the provider was originally designated. Moreover, the legislative intent and state policy expressed in section 1797.6 encourage a liberal construction favoring antitrust immunity for activities undertaken by local EMS agencies under section 1797.224.

County advances its admittedly narrow definition purportedly at the urging of the California EMS Authority (State). (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388 [241 Cal.Rptr. 67, 743 P.2d 1323].) The only reference in the record to State's position on the "manner and scope" provision is County's statement in open court that "even the state regulatory agency, the EMS Authority, doesn't know exactly what to make out of that. We have asked them several times to give us an interpretation since they were the state authority, but . . . they have been unwilling or otherwise unable to do so." In its brief amicus curiae, State

[5]Section 1797.6, subdivision (b) (added by Stats. 1984, ch. 1349, § 1, p. 4778) provides, "It is the intent of the Legislature in enacting this section and Sections 1797.85 and 1797.224 to prescribe and exercise the degree of state direction and supervision over emergency medical services as will provide for state action immunity under federal antitrust laws for activities undertaken by local governmental entities in carrying out their prescribed functions under [section 1797 et seq.]" (See also *Mercy-Peninsula Ambulance* v. *San Mateo County* (9th Cir. 1986) 791 F.2d 755, 757-758.)

offers no interpretation whatsoever of "manner and scope" as used in section 1797.224.

In reversing the trial court's judgment on this point, we simply hold, very narrowly, that section 1797.224 does not prohibit County from using City to provide EMS services in an exclusive operating area without a competitive process merely because City was not previously the legally authorized exclusive provider.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. DISPOSITION

The judgment is affirmed in part and reversed in part. Each party shall bear its own costs.

Strankman, J.,† and Haning, J., concurred.

---

*See footnote *ante*, page 1239.

†Presiding Justice of the Court of Appeal, First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.