[No. A062485. First Dist., Div. Three. Jan. 20, 1995.]

SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 715,
AFL-CIO, Plaintiff and Appellant, v.
CITY OF REDWOOD CITY et al., Defendants and Respondents.

## COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld and Stewart Weinberg for Plaintiff and Appellant.

David E. Schricker, City Attorney, Francois X. Sorba and Robert A. Boland, Assistant City Attorneys, and James A. Hildebrand for Defendants and Respondents.

James P. Lough, City Attorney (Fresno), Jesse J. Avila, Assistant City Attorney, and Arnold P. Peter as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**CHIN, P. J.**—Service Employees International Union Local 715, AFL-CIO (the Union), appeals from a judgment denying declaratory relief against respondents, the City of Redwood City and the Redwood City Fire Department (collectively, the City). The trial court held that the Fire Prevention Officers (FPO's) employed by the City and represented by the Union were not "peace officers" within the meaning of Penal Code section 830.37, subdivision (b).[1] The Union contends that because the FPO's primary duty is enforcement of laws relating to fire prevention, FPO's are peace officers under that statute, notwithstanding the City's restrictions on their authority and powers. We conclude that the statute does not support the Union's contention and that the trial court's holding was correct. We affirm the judgment.

### FACTS

The Union is the employee organization that the City recognizes as the representative of the City's FPO's. In filing this action, the Union sought a declaration that it is entitled to bargain with the City on behalf of FPO's as peace officers.

The job description for an FPO, which identifies the position as "Fire Prevention Officer (Civilian)," defines the job as follows: "Under supervision, conducts arson investigations, performs specialized work in the enforcement of fire prevention laws, ordinances, and regulations and the execution of a fire prevention program; and does related work as required."

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

The description further explains: "This is a fully qualified, working level inspector responsible for the compliance and promotion of fire prevention programs. Incumbent reports directly to the Fire Marshal and acts with considerable independence. It is distinguished from the position of Fire Inspector in that the latter is a safety position and performs fire fighting tasks when required whereas the Fire Prevention Officer performs technical fire prevention functions."

The job description also includes a section containing examples of the FPO's duties: "Enforces laws, ordinances, and regulations pertaining to the prevention and control of fire, the installation and maintenance of fire control and fire safety appliances, and the transportation, processing, storage and handling of combustible materials which create fire hazards; inspects buildings where fire hazards may exist; issues correction orders when unsafe conditions or practices are discovered and reinspects to ascertain compliance with the correction order; performs routine inspections of hotels, apartment houses, hospitals, rest homes, family care facilities, nurseries, and places of public assembly; conducts arson investigations which include collecting, photographing, and marking all evidence pertinent to a particular fire; appears in court and provides expert testimony on criminal complaints filed by the Fire Prevention Bureau, on misdemeanor offenses against fire laws, ordinances, and regulations, and on civil suits involving responsibility for fires; investigates complaints and performs permit and special inspections; prepares reports and standard forms, prepares and presents fire prevention programs as assigned."[2]

[2]The City's job announcements that led to the hiring of the FPO's involved in this case also reflected these responsibilities. A 1984 announcement described the FPO as one who "conducts arson investigations, inspections, performs specialized work in the enforcement of fire prevention laws, ordinances and regulations. [¶] The person selected will inspect the installation and maintenance of fire control and fire safety appliances, and the transportation, processing, storage and handling of combustible materials which create fire hazards; will be responsible for inspection of buildings where fire hazards may exist and issuing correction orders when unsafe conditions or practices are discovered and reinspects to ascertain compliance. In addition, [the person] will appear in court to provide expert testimony on criminal complaints filed by the Fire Prevention Bureau, on misdemeanor offenses against fire laws, ordinances, and regulations, and on civil suits involving responsibility for fires; [the FPO] prepares reports and standard forms, [and] prepares fire prevention programs as assigned."

A 1990 job announcement stated that an FPO "performs technical fire inspection and fire investigation work in enforcing compliance with laws, ordinances and regulations pertaining to the prevention and control of fire; establishes cause of fires and may be required to testify in court. [¶] Typical duties may include, but are not limited to the following: interpret and enforce fire safety laws, regulations and ordinances; perform fire inspections of new and existing buildings and installations requiring fire clearances; investigate complaints of fire prevention law/ordinance violations; issue correction orders as needed, including weed abatement; investigate and determine causes of fires; collect, prepare and present evidence in

The Redwood City Fire Department Operations Manual states that with respect to inspection enforcement procedures, "[i]t is the intent of the Department to achieve compliance by traditional means of inspection, notification, granting [of] reasonable time to comply, and reinspection. The citation shall be used only after all reasonable means to gain compliance have failed, or with proper justification, and at the discretion of the Fire Marshal." The manual states that a citation for an infraction[3] is an arrest, but requires release of arrestees if they sign the citation. The person's signature constitutes a promise to appear in court or post bail in lieu of physical arrest. If the individual refuses to sign the citation, the manual directs the FPO to summon a police officer or sheriff and request a physical arrest.

The citation that FPO's use in inspection enforcement procedures is called a notice to appear. The FPO's also can issue parking citations for violations such as obstructing a fire lane or a fire department vehicle. Additionally, FPO's can issue citations for violation of regulations prohibiting use or possession of fireworks and may seize illegal fireworks. During their work day, FPO's wear uniforms, name tags, and badges. The only special equipment FPO's carry is a portable radio; they do not carry firearms, handcuffs, batons, or mace.

In practice, the FPO's fire investigation responsibilities primarily involve determination of the cause and starting point of fires to which their supervisor or a fire suppression battalion chief assigns them. If the investigation shows that arson occurred, the fire department releases control of the scene to the police department, which supervises and directs subsequent fire investigation activities. The City's FPO's spend 25 percent to 40 percent of their time on fire investigations; they spend the rest of their time on fire code enforcement, through inspections and building plan reviews, and on public education.

Harry Anderson, one of the City's three FPO's, testified that it was his understanding that the City did not hire him in the capacity of a peace officer and that, as presently employed, he does not act in that capacity. Appearing as an expert witness for the Union, Keith Marshall, the deputy fire marshal for the Burlingame Fire Department, testified that the City hires civilian fire inspectors who do not act in the capacity of peace officers. The City

court when required; keep records and prepare reports as assigned; develop and conduct fire prevention/fire investigation programs and presentations for Redwood City citizens; assist Fire Department personnel in code interpretation, training and fire inspections; perform related duties as assigned."

[3]The manual states that "[t]he offense for which the citation is issued shall be an infraction and NOT a felony or misdemeanor." (Original emphasis.)

presented expert testimony from San Mateo Fire Chief Gary Schmitz, who reviewed the job description, activities, and responsibilities of the City's FPO's and concluded that the FPO's do not act in the capacity of peace officers. Chief Schmitz also stated that, under the job description, the primary duty of an FPO is the enforcement of laws relating to fire prevention.

## DISCUSSION

The Union raises issues that require interpretation of section 830.37. Basic rules of statutory construction require that we determine the Legislature's intent and that we look first to the statute's words to determine that intent. (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 741 [250 Cal.Rptr. 869, 759 P.2d 504]; see also *City of Sacramento* v. *Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793 [27 Cal.Rptr.2d 545] [" '[T]here can be no intent in a statute not expressed in its words . . . . [Citations.]' "].)[4] We must give the statutory language its ordinary meaning unless the statute specifies otherwise. (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc., supra,* 6 Cal.App.4th at pp. 1238-1239.) If possible, we must also give significance to every word, phrase, sentence, and part of a statute. (*Harroman Co.* v. *Town of Tiburon* (1991) 235 Cal.App.3d 388, 394-395 [1 Cal.Rptr.2d 72].) Similarly, we construe a statute with reference to the whole system of law of which it is a part. (*City of Petaluma* v. *County of Sonoma* (1993) 12 Cal.App.4th 1239, 1244 [15 Cal.Rptr.2d 617].)[5]

■ Where the statutory language is not clear and allows more than one meaning, the courts nevertheless have a duty to accept the meaning that the Legislature intends if its intention is ascertainable. (*Long Beach Police Officers Assn.* v. *City of Long Beach, supra,* 46 Cal.3d at p. 743; *Sand* v.

---

[4]As one court observed, "Judges, lawyers and laypeople all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' " (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298].)

[5]Code of Civil Procedure section 1858 reflects those basic rules. It provides in pertinent part: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

*Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787]; Civ. Code, § 1859.) To clarify ambiguities and to discern legislative intent, it is appropriate to refer to the statute's legislative history and statutory context. (*Long Beach Police Officers Assn., supra*, 46 Cal.3d at p. 743; *Sand, supra*, 34 Cal.3d at p. 570.) The courts recognize, though, that rigid adherence to particular dictionary definitions cannot resolve some apparent surface ambiguities. As our Supreme Court has observed: " 'There is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute.' [Citations.] 'When the occasion demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears.' [Citations.]" (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706].)

■ Section 830.37 states in pertinent part: "The following persons are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense . . . .[6] These peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency: [¶] (a) Members of an arson-investigating unit, regularly paid and employed in that capacity, of a fire department or fire protection agency of a county, city, city and county, district, or the state, if the primary duty of these peace officers is the detection and apprehension of persons who have violated any fire law or committed insurance fraud. [¶] (b) Members other than members of an arson-investigating unit, regularly paid and employed in that capacity, of a fire department or fire protection agency of a county, city, city and county, district, or the state, if the primary duty of these peace officers, when acting in that capacity, is the enforcement of laws relating to fire prevention or fire suppression."

Section 830.37 is part of chapter 4.5 (§ 830 et seq.; hereafter chapter 4.5), which identifies those persons who are peace officers. Section 830 of chapter 4.5 declares: "Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is

---

[6]Section 836 provides in pertinent part: "(a) A peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur: [¶] (1) The officer has reasonable cause to believe that the person to be arrested has committed a public offense in the officer's presence. [¶] (2) The person arrested has committed a felony, although not in the officer's presence. [¶] (3) The officer has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed."

a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer. . . ." The chapter's purpose is to " 'define peace officers, the extent of their jurisdiction, and the nature and scope of their authority, powers and duties . . . .' (Stats. 1968, ch. 1222, § 79, p. 2331.)" (*County of Santa Clara* v. *Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879 [13 Cal.Rptr.2d 53, 838 P.2d 781].) As section 830 suggests, the Legislature intended to prohibit local authorities from conferring peace officer status on employees that chapter 4.5 does not designate. (*County of Santa Clara, supra,* 3 Cal.4th at p. 879.)

Chapter 4.5 specifies dozens of government employees as peace officers, sometimes simply by job title,[7] but more often by reference both to a position and its primary duties.[8] In general, chapter 4.5 names some classifications of employees as peace officers whose powers are either specified or limited, provides that other employees are not peace officers but may exercise some peace officer functions under certain circumstances, denies peace officer status to some classifications, and denies or restricts the right of some peace officers to carry firearms. (See *County of Santa Clara* v. *Deputy Sheriffs' Assn., supra,* 3 Cal.4th at pp. 879-880.) The plain import of this statutory system is that the Legislature intended to grant peace officer status, and the powers and authority conferred with that status in particular instances, subject to carefully prescribed limitations and conditions.

As the City points out, section 830.37, subdivision (b), contains a clause that does not appear anywhere else in chapter 4.5's descriptions of peace officers: "(b) Members other than members of an arson-investigating unit, regularly paid and employed in that capacity, of a [city's] fire department . . . if the primary duty of these peace officers, *when acting in that capacity,* is the enforcement of laws relating to fire prevention or fire suppression." (§ 830.37, subd. (b), italics added.) The City contends that the clause, "when acting in that capacity," restricts peace officer status to only those fire

---

[7]E.g., section 830.1, subdivision (a) ("Any sheriff, undersheriff, or deputy sheriff, employed in that capacity . . ."); section 830.1, subdivision (b) ("The Deputy Director, assistant directors, chiefs, assistant chiefs, special agents, and narcotics agents of the Department of Justice . . .").

[8]E.g., section 830.2, subdivision (a) ("Any member of the California Highway Patrol, provided that the primary duty of the peace officer shall be the enforcement of the provisions of the Vehicle Code or of any other law relating to the use or operation of vehicles upon the highways, as that duty is set forth in the Vehicle Code"); section 830.36, subdivision (b) ("Bailiffs of the Supreme Court and of the courts of appeal, and coordinators of security for the judicial branch, if the primary duty of the peace officer is the enforcement of the law in or about properties owned, operated, or administered by the employing agency or when performing necessary duties with respect to patrons, employees, and properties of the employing agency").

department members who both enforce fire prevention or suppression laws as their primary duty *and act in the capacity of peace officers* in doing so. The City argues that it may determine whether its FPO's are to act in the capacity of peace officers in enforcing the City's fire code. The Union contends that "when acting in that capacity" means FPO's are peace officers when they act in performance of their primary duty of fire law enforcement.[9]

We believe that the City's interpretation comports with the plain meaning of section 830.37, subdivision (b). As this section uses the term, "capacity" means the position in which a person functions or the person's legal qualification or authority. (See American Heritage Dict. (1981) p. 199, col. 1; Webster's New Internat. Dict. (3d ed. 1970) p. 330, col. 3.) The statute's reference to "that capacity" necessarily refers to a person's capacity. Grammatically, the reference is to the nearest antecedent that is a person, i.e., "peace officer[]." The statute grants peace officer status to "Members . . . of a fire department . . . if the primary duty of these peace officers, when acting in that capacity, is the enforcement of laws relating to fire prevention or fire suppression." (§ 830.37, subd. (b).) Thus, as a matter of grammar and logic, "capacity" refers to the capacity of a peace officer and not to "primary duty." The latter interpretation, which the Union urges, is grammatically awkward. The Union's interpretation also makes the phrase "when acting in that capacity" redundant because the clause would refer to a peace officer's primary duty when performing that duty.

The City's interpretation also finds support in the evolution of the statutes designating fire department members as peace officers. When the Legislature first enacted chapter 4.5 in 1968, it did not confer peace officer status on local fire department members other than members of arson-investigating units. (Former § 830.1, subd. (m); see Historical Note, 50 West's Ann. Pen.

---

[9]*County of Santa Clara* v. *Deputy Sheriffs' Assn., supra,* 3 Cal.4th 873, offers a third, though apparently inadvertent, interpretation of this phrase. There, the court noted that some provisions of chapter 4.5 limit particular peace officers' powers and said, "For example, section 830.37, subdivision (b) provides that members of an arson-investigating unit employed by a fire department are peace officers if their primary duty is the enforcement of laws relating to fire prevention or fire suppression." (*County of Santa Clara, supra,* 3 Cal.4th at pp. 879-880.) This dictum apparently resulted from an unfortunate amalgamation of subdivisions (a) and (b) of section 830.37, rather than a studied determination of the meaning of subdivision (b). The potential for confusion stems from the way "in that capacity" is used in subdivision (a) to identify one group of fire department members ("(a) Members of an arson-investigating unit, regularly paid and employed in that capacity, of a fire department . . ."), and in subdivision (b) to help define a second group that excludes the first: "(b) Members other than members of an arson-investigating unit, regularly paid and employed in that capacity, of a fire department . . . ." (§ 830.37, subds. (a), (b).) To muddy the waters further, subdivision (b) uses "in that capacity" in two different senses, first to refer to members of an arson-investigating unit, and then to refer to members acting in the capacity of peace officers, as discussed *post.*

Code (1985 ed.) § 830.3, p. 288.) In 1969, it amended former section 830.1, subdivision (m), by adding: "[M]embers of a fire department of a local agency regularly paid and employed as such, are peace officers; provided, that . . . the exclusive duty, . . . of fire department members other than arson investigators *when acting as peace officers* shall be the enforcement of laws relating to fire prevention and fire suppression." (Stats. 1969, ch. 1511, § 1, p. 3092, italics added.)[10] The language of the statute thus designated certain fire department members as peace officers, but only when they were acting as peace officers whose duty was enforcement of fire laws.[11] This language remained essentially unchanged when the Legislature moved the definition of fire department members who are peace officers to section 830.31 in 1980. (See Stats. 1980, ch. 1340, § 9, p. 4723.) In 1989, the Legislature moved the definition to its present location in section 830.37 and revamped the language to its present form to designate as peace officers, "(b) Members . . . of a fire department . . . if the primary duty of these peace officers, *when acting in that capacity,* is the enforcement of laws relating to fire prevention or fire suppression." (§ 830.37, subd. (b); Stats. 1989, ch. 1165, § 30, pp. 4507-4508, italics added.) The similarity between the former "when acting as peace officers" (former § 830.1, subd. (m)) and the present "when acting in that capacity" (§ 830.37, subd. (b)) is too close to suggest that the Legislature intended any substantive change in the law in this regard.

As a result, section 830.37, subdivision (b), might appear to have some superficial circularity in its definition of fire department members as peace officers: fire department members are peace officers if they act in the capacity of peace officers and their primary duty when they do so is to enforce the fire laws. However, the legislative intent of the statutory language is to have peace officer status available only to those fire department

---

[10]The 1969 amendment to former section 830.3, subdivision (m), also provided: "Notwithstanding the provisions of Section 171c, 171d, 12027, or 12031, members of fire departments other than arson investigators are not peace officers for purposes of such sections except when designated as peace officers for such purposes by local ordinance or . . . resolution." (Stats. 1969, ch. 1511, § 1, p. 3092.) The Union argues that the subsequent deletion of this provision removed the City's authority to withhold peace officer status from fire department members. However, the context reveals a different legislative intent. The Penal Code sections that the former section 830.3, subdivision (m), provision referenced related to exempting peace officers from the prohibition against carrying loaded firearms in the state capitol (§ 171c) or in the Governor's mansion (§ 171d) and exempted certain peace officers from the prohibition against carrying a concealed or loaded firearm (§§ 12027, 12031). Deletion of this provision had no substantive effect because under the first paragraph of section 830.37, fire department members who are peace officers "may carry firearms only if authorized and under terms and conditions specified by their employing agency."

[11]In 1976, the Legislature changed the proviso to require only that fire law enforcement be the primary, rather than exclusive, duty of fire department members when acting as peace officers. (See Historical Note, 50 West's Ann. Pen. Code, *supra*, foll. § 830.3, p. 292.)

members who act in the capacity of peace officers. Conversely, if fire department members do not act in the capacity of peace officers, then they will not be peace officers under section 830.37, subdivision (b). When it enacted section 830.37, subdivision (b), and the section's predecessors, the Legislature plainly did not equate enforcing fire laws with acting in the capacity of a peace officer. Nor did the Legislature employ language that would require peace officer status for all fire department members whose primary duty is enforcement of the fire laws.

As a result, the unique language of section 830.37, subdivision (b), leaves to the employing agency the determination of whether its fire department members will act in the capacity of peace officers. The Legislature's overall intent in chapter 4.5 is to designate the public employees who are peace officers and to limit that status to the persons designated. (*County of Santa Clara* v. *Deputy Sheriffs' Assn.*, *supra*, 3 Cal.4th at pp. 879-880.) Our conclusion as to the meaning of section 830.37, subdivision (b), is consistent with that intent because the employing agency's discretion does not extend to having employees that chapter 4.5 does not designate nevertheless act in the capacity of peace officers. Rather, the employing agency may, under section 830.37, subdivision (b), decide whether its employees will act in that capacity and thereby obtain full peace officer status.

The evidence at trial established that the City's FPO's do not act in the capacity of peace officers and were not hired to do so. As a consequence, the trial court reached the correct decision in holding that the FPO's are not peace officers under section 830.37, subdivision (b).

DISPOSITION

The judgment is affirmed.

Merrill, J., and Corrigan, J., concurred.