Filed 8/11/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STANISLAUS COUNTY DEPUTY SHERIFFS' ASSOCIATION, | F071257 |
| Petitioner and Appellant, | (Super. Ct. No. 2001877) |
| v. | |
| COUNTY OF STANISLAUS et al., | **OPINION** |
| Respondents. | |

APPEAL from a judgment of the Superior Court of Stanislaus County. Timothy W. Salter, Judge.

Goyette & Associates and Richard P. Fisher for Petitioner and Appellant.

Jones & Mayer, Martin J. Mayer and James R. Touchstone for Respondents.

-ooOoo-

The Stanislaus County Deputy Sheriffs' Association (appellant), on behalf of certain custodial deputies designated as a "peace officer" by Penal Code[1] section 830.1,

---

[1]     Unless otherwise indicated, further statutory references are to the Penal Code.

subdivision (c) (custodial deputies), filed this action in the trial court seeking, among other relief, a judicial declaration that such custodial deputies may lawfully carry concealed firearms while off duty without the necessity of obtaining a permit to carry a concealed weapon. The current practice of Stanislaus County, Stanislaus County Sheriff's Department, the Chief Executive Officer of Stanislaus County and the Stanislaus County Sheriff (collectively respondents) is to recognize that a custodial deputy may carry a concealed firearm while off duty only if that deputy has first obtained a license or a permit to carry a concealed weapon.[2] Appellant maintains that respondents' practice does not comport with section 25450, which categorically exempts all peace officers listed in section 830.1 from the prohibition against carrying a concealed weapon. As we explain below, appellant is correct.[3] Accordingly, we reverse the contrary conclusion and judgment of the trial court and remand the matter back to the trial court with instructions to enter declaratory relief in appellant's favor consistent with this opinion.

---

[2] In this opinion, we refer to a permit or license (to carry concealed weapons) interchangeably. We also use the terms weapons and firearms interchangeably, with the understanding that the only type of weapons at issue herein are firearms "capable of being concealed upon the person" as described in section 25400, subdivision (a)(1)–(3).

[3] Of course, our discussion assumes that the custodial deputies are in good standing with the Stanislaus County Sheriff's Department and have complied with all legal requirements of peace officers (see §§ 830, 832). We also note at the outset that the law's granting of an exemption is not the equivalent of conferring a vested right. Other legal considerations may bear upon an officer's concealed firearm authority. Thus, for example, a sheriff or police department may impose restrictions on a particular officer's privilege to carry a concealed weapon off duty when necessary for public safety. (See *Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 345–346.)

## FACTS AND PROCEDURAL HISTORY

After attempting to resolve the instant dispute through administrative channels, appellant's petition for writ of mandate and complaint for declaratory relief, etc. (the petition) was filed in the trial court on August 15, 2013. The petition was made on behalf of two classifications of sheriff deputies—namely, "Stanislaus County Deputy Sheriff-Custodial and Sergeant-Custodial." It is undisputed that both classifications, which are referred to together herein as custodial deputies, are peace officers under section 830.1, subdivision (c). According to the allegations in the petition, all peace officers listed in section 830.1 are exempt by statute from the law criminalizing the carrying of concealed weapons and may carry concealed weapons while off duty without the need to obtain a permit to carry concealed weapons. Notwithstanding the exemption, respondents' practice has been to issue to each custodial deputy a restrictive identification card, which states that the deputy may only carry a concealed weapon while off duty if that deputy is in possession of a valid permit to carry a concealed weapon. Appellant alleges that this practice places an undue burden on custodial deputies (in terms of fees, applications, renewals, etc.), and is contrary to applicable law, since the Legislature intended them to be exempt from such requirements.

Appellant's petition sought a judicial declaration that such custodial deputies are exempt from the law prohibiting concealed firearms and may, while off duty, carry such a firearm on their person or in their vehicle without the necessity of first obtaining a permit to carry a concealed weapon. Additionally, appellant's petition sought a writ of mandate and/or an injunction requiring respondents to provide the custodial deputies with accurate identification cards reflecting and/or certifying that they may carry a concealed firearm while off duty without the necessity of obtaining a license or permit to carry a concealed weapon.[4] As the above described pleadings make clear, the gist of this dispute concerns

---

[4] In other words, to the extent that respondents are going to put such information on the identification cards or badges, it should be legally accurate information.

3.

the applicability and impact of the exemption under section 25450 when the custodial deputies are *off duty*.

On August 19, 2014, respondents filed opposition in the trial court to the petition, arguing that pursuant to section 830.1, subdivision (c), custodial deputies are peace officers with only limited authority and, as such, cease to have peace officer status or authority outside of their particular custodial assignments. According to respondents, this means that custodial deputies, when off duty, are not exempt from the law that prohibits carrying concealed weapons. As a result, custodial deputies who wish to carry a concealed firearm while off duty must first obtain a "CCW" (carry a concealed weapon) permit. In support of their position, respondents especially rely upon a 2002 Attorney General opinion (i.e., 85 Ops.Cal.Atty.Gen. 130 (2002)).

Appellant filed a reply in the trial court on August 29, 2014. Appellant argued therein that the exemption in question, section 25450, does not make the distinctions raised by respondents, but is worded so as to be fully applicable to all peace officers listed in section 830.1, which was also how the Legislature understood the issue based on certain statements in the legislative history. Appellant's reply further stressed why the issue is important to the custodial deputies: "Just like many Peace Officers in California, … Custodial Deputies … work in close proximity with convicted felons, many with long and violent histories. Custodial Deputies put their lives on the line everyday going to work with these dangerous individuals, and that danger continues as they lead their lives away from their jobs. [Appellant's] members only ask to be treated like other Peace Officers in California listed under section 830.1 who have been wisely granted the privilege by the Legislature to carry concealed weapons to protect themselves and their families from harm."

In connection with the hearing of the petition in the trial court, the parties stipulated in writing to a number of facts. The stipulated facts included the following:

"8.    In Stanislaus County, the Deputy Sheriff Custodial position escorts, receives, registers, controls, supervises and cares for inmates and may be assigned to either the County Jail, Public Safety Center or Honor Farm.

"9.    In Stanislaus County, the Sergeant Custodial position supervises the work of personnel and inmates assigned to the Public Safety Center, County Jail, Honor Farm, Support Services and administers the work furlough, alternative work and home detention programs.

"10.    In Stanislaus County, both the Deputy Sheriff Custodial Position and the Sergeant Custodial position (collectively "Custodial Deputies") are sworn under and derive powers from … section 830.1[, subdivision ](c).

"11.    In Stanislaus County, Custodial Deputies have an endorsement on the back of their County identification cards that states: 'The bearer whose picture is affixed on the reverse of this card is a Peace Officer regularly paid as such and sworn under Section 830.1[, subdivision ](c) .…  The bearer has completed training as required by statute and is authorized to carry a weapon while engaged in the performance relating to his or her Custodial assignments, or when performing law-enforcement duties decided by the Stanislaus County Sheriff during a local or state emergency.  The bearer is also authorized to carry a concealed weapon while off-duty when in the possession of a valid CCW permit.'

"12.    In Stanislaus County, Custodial Deputies are limited peace officers whose duties are limited to maintaining the operations of County custodial facilities, including the custody, care, supervision, security, movement, and transportation of inmates.

"13.    In Stanislaus County, Custodial Deputies do not perform their custodial duties while off-duty.

"14.    The Sheriff of Stanislaus County has discretion to issue a license to carry a concealed firearm to residents within Stanislaus County.

"15.    In Stanislaus County, a concealed weapons license issued to a Custodial Deputy is valid for a period not to exceed four years.  Said license can be renewed at the conclusion of that period.  Except that licenses issued to Custodial Deputies shall be invalid upon the individual's conclusion of service as a Custodial Deputy.

"16.    The cost associated with an application for a concealed weapons license in Stanislaus County is $113.00, which consists of a $20 County processing fee and a $93.00 California Department of Justice processing fee.

"17.    The cost associated with an application for a renewal of a concealed weapons license in Stanislaus County is $57.00, which consists of a $5.00 County processing fee and a $52.00 California Department of Justice processing fee."

On September 9, 2014, the parties appeared at the hearing and presented oral argument, highlighting the issues and advocating for their respective legal positions. At the close of oral argument, the trial court took the matter under submission.

On November 6, 2014, the trial court issued its tentative decision, siding with respondents' position and ordering that the petition should be denied in its entirety. The tentative decision became final and on January 9, 2015, the trial court entered judgment in favor of respondents. This appeal by appellant followed.

## DISCUSSION

### I.    Standard of Review

The issues presented in this appeal involve the interpretation and application of statutory provisions where there are no material factual disputes. Our review of such legal issues is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432.)

6.

## II.     The Statutory Framework for the Issues

The question before us involves the interplay of several related sections of the Penal Code.  Section 25400[5] prohibits the carrying of concealed firearms (see § 25400, subd. (a)), albeit a procedure is provided in the statutory scheme whereby individuals may apply for a license to carry concealed weapons (see § 26150 et seq. [licensing procedure implemented by sheriff of each county]).  Section 25450 sets forth what is generally known as the peace officer exemption to the law against carrying concealed firearms.  It declares, in relevant part, as follows:  "Section 25400 does not apply to, or affect, any of the following:  [¶]  (a) *Any peace officer, listed in Section 830.1* or 830.2, or subdivision (a) of Section 830.33, *whether active or honorably retired.*  [¶] (b) Any other duly appointed peace officer…."  (§ 25450, subd. (a), italics added.)

Section 830.1, subdivision (c), expressly provides that custodial deputies of the type considered in the present appeal *are* peace officers, and it goes on to describe the scope and limitations of the deputies' authority as peace officers.  Section 830.1 is part of chapter 4.5 of part 2, title 3 of the Penal Code (section 830 et seq.; hereafter chapter 4.5), which chapter identifies those persons who are peace officers and defines the nature and scope of their authority, powers and duties.  (*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879.)[6]  As summarized by one Court of Appeal:  "Chapter 4.5 specifies dozens of government employees as peace officers, sometimes simply by job title, but more often by reference both to a position and its primary duties.  In general, chapter 4.5 names some classifications of employees as peace officers whose powers are either specified or limited, provides that other employees are not peace officers but may

---

[5]     Section 25400, subdivision (a), prohibits carrying a concealed "pistol, revolver, or other firearm capable of being concealed upon the person," and includes carrying such weapon concealed on the person or in a vehicle in which the person is an occupant.

[6]     Section 830 states:  "Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer …."

7.

exercise some peace officer functions under certain circumstances, denies peace officer status to some classifications, and denies or restricts the right of some peace officers to carry firearms.  [Citation.]  The plain import of this statutory system is that the Legislature intended to grant peace officer status, and the power and authority conferred with that status in particular instances, subject to carefully prescribed limitations and conditions." (*Service Employees Internat. Union v. City of Redwood City* (1995) 32 Cal.App.4th 53, 60, fns. omitted (*Service Employees*).)

The Attorney General has issued a number of opinions over the years on legal questions relating to peace officers. While not binding on us, such opinions are entitled to considerable weight.  (*Orange County Employees Assn., Inc. v. County of Orange* (1993) 14 Cal.App.4th 575, 578 (*Orange County*).)  In the past, the Attorney General has concluded that the peace officer exemption provided in former section 12027 (now section 25450) was applicable to specified peace officers whether they were on or off duty and, therefore, such officers were not required to obtain a permit to carry a concealed weapon while off duty.  (See, e.g., 63 Ops.Cal.Atty.Gen. 385 (1980) [correctional officers under § 830.5 exempt whether on or off duty]; 72 Ops.Cal.Atty.Gen. 167 (1989) [deputy probation officers exempt off duty; no license required]; 78 Ops.Cal.Atty.Gen. 209 (1995) [investigators of board of prison terms exempt off duty; no license required].)

In 2002, the Attorney General, relying on limiting language in section 830.1, subdivision (c), held that custodial deputies described therein did not have peace officer status when they were away from the county detention facilities appearing at community service events, participating in the Sheriff's Honor Guard, or conducting recruitment background checks or internal affairs investigations.  During those occasions, since the deputies purportedly lacked peace officer status, the Attorney General held the custodial deputies "would be subject to certain statutory prohibitions such as those against carrying a concealed weapon."  (85 Ops.Cal.Atty.Gen., *supra*, at pp. 3–4).  In the present case, the

8.

trial court understood this 2002 Attorney General opinion to mean that the peace officer exemption (§ 25450) did not apply to custodial deputies while they were off duty. Adhering to that Attorney General opinion, the trial court denied all relief to appellant.

In the instant appeal, appellant's position is essentially that section 25450 creates a categorical exemption for "any peace officer … listed in section 830.1," and since custodial deputies are peace officers listed in section 830.1, subdivision (c), they *are* exempt and need not obtain a license to carry a concealed firearm when off duty. In other words, for purposes of the exemption, a custodial deputy's status as a "peace officer, listed in Section 830.1" (§ 25450, subd. (a)) does not end when he or she is off duty and, therefore, the exemption applies at such times. Appellant maintains the legislative history was clear on this point, and the Legislature's intent governs the issue. Moreover, appellant points out that nothing in section 830.1, subdivision (c), indicates otherwise.

Respondents, relying on 85 Ops.Cal.Atty.Gen. 130, *supra*, argue that custodial deputies cease to have the status of peace officers as soon as they are off duty, which would mean they are not exempt under section 25450 at such times and must obtain a permit to carry a concealed weapon.

On balance, we believe that appellant's position is the correct one.

**III.    The Exemption is Applicable to Off-duty Custodial Deputies**

The core issue before us is whether the peace officer exemption in section 25450, which by its terms applies to custodial deputies described in section 830.1, subdivision (c), ceases to apply to such deputies when they are off duty. Of course, the nature or scope of the exemption is a question of statutory interpretation.

A.    Rules of Statutory Construction

The principles that govern the process of statutory construction are well settled. "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning."

9.

(*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) We keep in mind that the words of the statute are to be construed in context of the statutory framework of which the statute is a part, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. (*Haas v. Meisner* (2002) 103 Cal.App.4th 580, 586; *Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.) "When the language of the statute is clear, we need go no further." (*Nolan v. City of Anaheim*, *supra*, at p. 340.) That is, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

"Where the statutory language is not clear and allows more than one meaning, the courts nevertheless have a duty to accept the meaning that the Legislature intends if its intention is ascertainable." (*Service Employees*, *supra*, 32 Cal.App.4th at p. 58.) To clarify ambiguities and to discern legislative intent, it is appropriate to refer to extrinsic aids such as the legislative history and context. (*Id*. at p. 59.) In this regard, committee reports are often useful in determining the Legislature's intent. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist*. (1997) 14 Cal.4th 627, 646 (*California Teachers Assn.*).) Prior judicial or administrative construction of the statute may also assist in discerning the Legislature's intent. (*Orange County*, *supra*, 14 Cal.App.4th at p. 582 [Attorney General opinions].)

B.     Section 25450

Our starting point in discerning the Legislature's intent as to the scope of the exemption at issue is the language of the exemption statute itself. Section 25450 states: "As provided in this article, Section 25400 does not apply to, or affect, any of the following: [¶] (a) *Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired*. [¶] (b) Any other duly appointed peace officer. [¶] (c) Any honorably retired peace officer listed in subdivision (c) of Section 830.5. [¶] (d) Any other honorably retired peace officer who during the course

10.

and scope of his or her appointment as a peace officer was authorized to, and did, carry a firearm. [¶] (e) Any full-time paid peace officer of another state or the federal government who is carrying out official duties while in California. [¶] (f) Any person summoned by any of these officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer." (Italics added.)

By its terms, section 25450 exempts the persons described therein from section 25400—the law that would otherwise prohibit the carrying of concealed firearms. A conspicuous feature of section 25450 is that some of the exempt persons described therein are simply identified as a category or class of peace officers, such as in subdivisions (a) and (b), while other persons referred to in the statute are required to be acting in the scope of a specific duty or activity in order for the exemption to apply, such as in subdivisions (e) and (f). This reflects that when the Legislature wants to limit the exemption to occasions in which a peace officer or other person is acting in the course of particular duties or authority, the Legislature does so *explicitly*—as it has done in the exemption statute itself, or (as noted below) in the applicable section of chapter 4.5. Since subdivision (a) of section 25450 grants the exemption to "[*a*]*ny* peace officer, listed in Section 830.1" (italics added), and does not tie the exemption to the officer's performance of any particular law enforcement duties or responsibilities, it seems reasonable to assume from the language and structure of the statute that the Legislature intended the exemption to apply whether such peace officers were on or off duty.

Consistent with our analysis is the fact that subdivision (a) of section 25450 exempts any peace officer listed in section 830.1 et al., "whether active *or* honorably retired" (italics added). Obviously, persons who are honorably retired peace officers are not engaged in the scope of a present, on-duty assignment as a peace officer; nevertheless, the exemption applies to them as individuals. It would seem that, at least for purposes of this subdivision of the exemption, the Legislature was interested in benefitting *the persons* who serve as section 830.1 peace officers, or who are honorably

11.

retired from such service, without imposing further conditions (i.e., situational variables) on the exemption such as on duty, off duty or scope of authority. Of course, we will have to consider section 830.1 as well, and we do so below. However, at this point, we simply observe that there is no indication in the wording of section 25450, subdivision (a) itself—which plainly confers the exemption on broad categories of listed peace officers and retired officers—that the exemption was meant to turn on and off like a light switch depending on the individual's particular activities, location or circumstances in a given moment.[7]

 C. Prior Attorney General Opinions and the *Orange County* Case

We note that past Attorney General opinions have, to a significant extent, agreed with what we have said thus far concerning the peace officer exemption statute. For example, in 1980, the Attorney General held that "Department of Corrections peace officers, as defined in … section 830.5, are exempt from the prohibition against carrying a concealed firearm … by virtue of [former] section 12027 [now section 25450] whether such officers are on duty or off duty." (63 Ops.Cal.Atty.Gen., *supra*, at p. 1.) In considering the wording of the exemption statute, the Attorney General's opinion noted that "[i]f the Legislature had intended the exemption in [former] section 12027 [now section 25450] to apply to peace officers only when they were acting with peace officer authority it could have so stated" (*id.* at p. 7, fn. omitted), adding that "when the Legislature has determined to limit the exemption of [former] section 12027 [now section 25450] to a person while such person is acting in the course of a certain duty, it has done so" (*id.* at pp. 7–8). Thus, the Attorney General concluded in that opinion that the Legislature did not intend to limit the exemption to peace officers "while they are

---

**7** At this point in our analysis, we are considering the language and structure of the exemption statute itself. Later in our discussion, we will consider whether any limiting language in section 830.1, subdivision (c), may potentially qualify or limit what is otherwise indicated by section 25450, subdivision (a).

12.

acting within the scope of peace officer authority." (*Id*. at p. 12.; accord, 72 Ops.Cal.Atty.Gen., *supra*, at p. 8; 78 Ops.Cal.Atty.Gen., *supra*, at pp. 8–9.)[8]

In an apparent response to the opinion in 63 Ops.Cal.Atty.Gen. 385, *supra*, the Legislature added language to section 830.5 to address the carrying of firearms by state correctional officers, and it has continued to amend that section over the years, including the addition of provisions referencing both on-duty and off-duty carrying of firearms by certain officers.[9] (*Orange County*, *supra*, 14 Cal.App.4th at pp. 578–582 [summarizing Attorney General Opinions interpreting peace officer exemption and legislative response in the form of section 830.5 amendments].) According to the appellate court's analysis in *Orange County*, this history indicates that when the Legislature wants to restrict the effect of the peace officer exemption for a particular classification of peace officers, it does so by expressly addressing the matter of carrying of firearms within the applicable provision of chapter 4.5. (*Orange County*, *supra*, at p. 582.) The Court of Appeal forcefully stated: "[I]n various amendments to … section 830.5 over the past decade … the Legislature has specifically authorized on- and off-duty regulation of concealable firearms of state correctional officers. Had it intended county officers to be subject to similar controls, it surely would have said so." (*Ibid*.)

---

[8]    In 78 Ops.Cal.Atty.Gen., *supra*, at page 19, the Attorney General observed: "As long as the person has the status of being a duly appointed peace officer, the statutory exemption for possessing a firearm applies regardless of when or where the person may exercise peace officer powers."

[9]    As currently worded, section 830.5 regulates carrying firearms on-duty and, for some categories of peace officer, it addresses off duty as well. (See § 830.5, subds. (c) & (d).) It also states in the initial paragraph: "Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency …." (§ 830.5.) The latter language, which is also contained in numerous other sections of chapter 4.5, has been held to allow employer regulation of carrying firearms only when the peace officers are on duty. (*Orange County*, *supra*, 14 Cal.App.4th at pp. 581–583 [construing §§ 830.33, 830.35 & 830.36].) We note that at least one section of chapter 4.5 explicitly restricts off-duty carrying of firearms by certain peace officers (see § 830.31, subd. (c)(3)), and other sections prohibit carrying any firearms (see, e.g., § 830.3, subds. (h), (k), (*l*), (m), (*o*) & (q)).

*Orange County* ultimately involved the interpretation of language in sections 830.33, 830.35 and 830.36, stating that the identified peace officers in those sections may carry firearms "'only if authorized and under terms and conditions specified by their employing agency.'" (*Orange County*, *supra*, 14 Cal.App.4th at pp. 581–582.) In light of an Attorney General interpretation that such wording referred only to *on-duty* carrying of firearms, of which interpretation the Legislature was presumably aware at the time the subject provisions were enacted, the Court of Appeal held that the language allowing the employing agency to regulate carrying of firearms applied only to *on-duty* carrying of firearms, not to off-duty carrying. It concluded: "We must assume the Legislature knew what it was doing when it employed the language of the statutes at issue in this case. If the county wishes to restrict the carrying of concealed weapons by the affected officers, it will have to apply to the Legislature." (*Id*. at pp. 582–583, fn. omitted.) Because the county in that case had improperly applied the language in question to restrict the peace officers from carrying concealed firearms while *off duty*, which practice the trial court had upheld, the Court of Appeal reversed with directions to enter declaratory relief for the plaintiff, Orange County Employees Association. (*Id*. at pp. 577, 583.)

Although the *Orange County* case involved different provisions of chapter 4.5 (our case involves § 830.1), the basic approach it employed reinforces our observation that when the Legislature wishes to restrict or qualify the scope of the peace officer exemption with respect to a particular classification of peace officer, the Legislature does so—either in the exemption statute itself, or by explicitly addressing the matter of carrying firearms within the applicable provision of chapter 4.5.

D.    Section 830.1

This leads to the questions: Does section 830.1, subdivision (c), explicitly restrict or qualify the peace officer exemption granted to the custodial deputies under

section 25450, subdivision (a)?  Does it expressly address the carrying of firearms, whether on or off duty?  Plainly, it does neither.

Section 830.1, subdivision (c), provides that any deputy sheriff of one of the counties listed therein (including Stanislaus County) "who is employed to perform duties exclusively or initially relating to custodial assignments with responsibilities for maintaining the operations of county custodial facilities, including the custody, care, supervision, security, movement, and transportation of inmates, *is a peace officer* whose authority extends to any place in the state only while engaged in the performance of the duties of his or her respective employment and for the purpose of carrying out the primary function of employment relating to his or her custodial assignments, or when performing other law enforcement duties directed by his or her employing agency during a local state of emergency."  (Italics added.)[10]

Section 830.1, subdivision (c), is similar to most of the provisions of chapter 4.5 in that it (1) identifies certain persons (i.e., custodial deputies of the listed counties) as peace officers and (2) defines, limits and delineates the nature of the authority such persons have as peace officers.  However, unlike a number of other provisions in chapter 4.5 (e.g., §§ 830.5, 830.31, 830.33), nothing in section 830.1, subdivision (c), purports to address, much less limit, the carrying of firearms by the peace officers described therein, whether on or off duty.  Because section 25450, subdivision (a), unequivocally grants an exemption from the law prohibiting the carrying of concealed weapons to "[a]ny peace officer listed in Section 830.1," and since nothing in section 830.1, subdivision (c),

---

[10]    We note that custodial deputies should not be confused with other types of custodial positions that are not peace officers.  Local law enforcement agencies may employ custodial officers under sections 831 and 831.5 to assist in the work of maintaining custody of prisoners and to perform other tasks in local detention facilities.  By statute, such custodial officers are *not* peace officers, although they may have some functions that are similar to peace officers. (§§ 831, subd. (a), 831.5, subd. (a).)

15.

purports to restrict or qualify what has been granted in that exemption, it follows that the exemption is fully applicable to custodial deputies.

Indeed, this appears to have been the result actually contemplated by the Legislature, as evidenced by certain legislative committee reports. Custodial deputies of certain counties were initially declared to be peace officers during the 1996 legislative session, when subdivision (c) of section 830.1 was enacted. (Stats. 1996, ch. 950, § 1 (Assem. Bill No. 574).) Four years later, custodial deputies employed by San Diego County were added to the peace officers identified in section 830.1, subdivision (c). (Stats. 2000, ch. 61, § 1 (Sen. Bill No. 1762).) When Senate Bill No. 1762 was being considered, the Senate Committee on Public Safety provided its analysis of the legislation, noting that "[e]xisting law provides that any peace officer listed in … sections 830.1, 830.2, and other duly appointed peace officers are allowed to carry firearms concealed in public while off-duty." (Sen. Com. on Pub. Safety, analysis of Sen. Bill No. 1762 (1999-2000 Reg. Sess.) as amended May 2, 2000, p. 9.) The Senate Committee on Public Safety then made the following comment on the effect of the bill on San Diego County custodial deputies: "The sponsors of this bill are … now apparently comfortable with the effect of this bill as currently amended which would allow all of the new [section] 830.1 correctional peace officers to carry firearms off-duty without the sheriff needing to issue a separate permit to carry a concealed weapon in public to those officers." (*Id.* at p. 11.) As correctly asserted by appellant, this is a clear indication of the Legislature's understanding and intent with respect to custodial deputies listed as peace officers under section 830.1, subdivision (c); namely, that such deputies may carry concealed weapons while off duty without the necessity of obtaining a separate permit or license.

Seven years after San Diego County was added to section 830.1, subdivision (c), Glenn, Lassen and Stanislaus Counties were added as well. (Stats. 2007, ch. 84, § 1 (Assem. Bill No. 151 (2007-2008 Reg. Sess.).) In connection with Assembly Bill

16.

No. 151, the Senate Committee on Public Safety again commented on the effect of the counties' custodial deputies being included as peace officers under the proposed law, stating as follows: "Being a peace officer … confers a special status under several Penal Code provisions, e.g., … any peace officer listed in … Sections 830.1, 830.2, is allowed to carry firearms concealed in public while off-duty, even if that person's employing agency does not allow the officer to carry a firearm while on-duty. (*Orange County*[, *supra*,] 14 Cal.App.4th [at p. ]582.) Additionally, an honorably retired peace officer may carry a concealed and/or a loaded weapon in a public place or vehicle after retirement." (Sen. Com. on Pub. Safety, analysis of Assem. Bill No. 151 (2007-2008 Reg. Sess.) as introduced Jan. 17, 2007, p. 6.) We note that similar statements are contained in committee reports when, in other legislative sessions, other counties were added to section 830.1, subdivision (c), by similar amendment. (See, e.g., Sen. Com. on Pub. Safety, analysis of Assem. Bill No. 272 (2005-2006 Reg. Sess.), enacted by Stats. 2006, ch. 127, § 1 [adding Inyo, Kings & Tulare Counties to § 830.1, subd. (c)].)

Legislative history such as committee reports may be resorted to as an extrinsic aid to discerning legislative intent. (*California Teachers Assn.*, *supra*, 14 Cal.4th at p. 646.) Here, the committee reports recited above strongly suggest that, in declaring custodial deputies to be peace officers under section 831, subdivision (c), the Legislature understood and intended one of the effects thereof would be that such custodial deputies would be allowed to carry a concealed weapon while off duty without the necessity of obtaining a separate permit from the sheriff. If there was any doubt on this issue, we believe the legislative history decisively resolves it in favor of the interpretation urged by appellant.

E. The 2002 Attorney General Opinion

As we noted above, in 2002, the Attorney General, relying on the language of section 830.1, subdivision (c), held that custodial deputies described therein did not have peace officer status or authority when they were away from the county detention facilities

17.

appearing at community service events, participating in the Sheriff's Honor Guard, or conducting recruitment background checks or internal affairs investigations. During those occasions, since the deputies purportedly lacked peace officer status, the Attorney General held the custodial deputies "would be subject to certain statutory prohibitions such as those against carrying a concealed weapon." (85 Ops.Cal.Atty.Gen., *supra*, at pp. 3–4). The trial court relied on this 2002 Attorney General opinion to conclude that the peace officer exemption (§ 25450) did not apply to custodial deputies while they were off duty. On that basis, the trial court denied all relief.

To the extent that the 2002 Attorney General Opinion held that the peace officer exemption does not apply to custodial deputies under section 830.1, subdivision (c), while they are off duty, we decline to follow it. (85 Ops.Cal.Atty.Gen., *supra*, at pp. 3–4, 8–9.) Respondents argue, based on said Attorney General opinion, that the limiting language of section 830.1, subdivision (c), relating to custodial deputies' *scope of authority* as peace officers would cause them to lose their peace officer *status* at the moment they were off duty. We disagree. Section 830.1, subdivision (c), declares without any qualification that a custodial deputy *is a peace officer*, and then goes on to delineate a custodial deputy's scope or extent of authority. Nothing in that section's description (including limitations) of custodial deputies' scope of authority *as peace officers* indicates an entire loss of their *status* as peace officers while they are off duty.

Moreover, as we have explained at length herein, the pattern used by the Legislature in this statutory scheme is that when it wants to limit the application of the peace officer exemption with respect to a particular classification of peace officer, it does so explicitly. That was not done in section 830.1, subdivision (c), and we find no warrant to find such a limitation by implication.

## IV. Dispositional Matters

In its petition in the trial court, appellant sought a judicial declaration that section 830.1, subdivision (c), custodial deputies are exempt (under § 25450, subd. (a))

from the law prohibiting the carrying of concealed firearms, and need not obtain a permit from the sheriff to carry a concealed firearm while off duty.  For the reasons discussed in this opinion, appellant is clearly entitled to such declaratory relief.  We therefore reverse the judgment of the trial court and remand the case to the trial court with directions to enter a new judgment granting declaratory relief to appellant, consistent with this opinion.  On remand, the trial court shall also consider and decide whether there are adequate and proper grounds to grant the other forms of relief sought by appellant in the petition under the related causes of action for writ of mandate and/or injunctive relief.[11] The trial court's decision on those related causes of action shall likewise be set forth in the new judgment to be entered by it.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion, including the entry of declaratory relief in appellant's favor.  Costs on appeal are awarded to appellant.

_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

---

[11]    Of course, the trial court may require further briefing and proceedings on such causes of action before determining whether or not such further relief is warranted or proper under the circumstances.

19.