Filed 12/19/18; Certified for publication 1/15/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS,<br><br>  Plaintiff and Respondent,<br><br>      v.<br><br>J.W.,<br><br>  Defendant and Appellant. | F077220<br><br>(Super. Ct. No. 18CRAD684104)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Ismael A. Castro and Judy Wong, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant J.W. appeals an order finding he lacks the capacity to refuse treatment and compelling him to undergo the involuntary administration of antipsychotic medication by respondent, State Department of State Hospitals, over the course of a year. His appeal raises questions about the authority of the state to pursue such orders under

the Sexually Violent Predators Act (SVPA), Welfare and Institutions Code section 6600 et seq.,[1] when the individual in question has been held upon probable cause under the SVPA but has not been committed following a trial.  Respondent contends such actions are authorized under the SVPA and its own regulations but, regardless, appellant's contentions are barred by several procedural flaws.  For the reasons set forth below, we conclude the SVPA provides the court with discretionary authority to involuntarily medicate an incompetent person placed with the State Hospital pre-commitment.  We therefore affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

From the available record, it appears that in April 2016 appellant was nearing the end of his term of incarceration following a conviction under Penal Code section 266i, subd. (a)(2) for causing, inducing, persuading, or encouraging another to become a prostitute by promises, threats, violence or by any device or scheme.[2]  At some point, appellant was referred for possible further confinement under the SVPA.  On April 7, following a probable cause hearing, a court found "there is probable cause to believe that [appellant] is likely to engage in sexually violent predatory criminal behavior upon his release."  Consistent with his statutory rights discussed below, appellant requested and was granted a jury trial and his case was continued to set a trial date.  In the interim, appellant was "ordered placed at Coalinga State Hospital or any facility designated by the

---

[1]    All future statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    Appellant appears to have been charged with much more serious offenses, including charges under Penal Code sections 261, subdivision (a)(2) [rape by force or threat of force], 288a, subdivision (c)(2) [oral copulation by force], and 289, subdivision (a)(1) [forcible sexual penetration], but found not guilty.  The record does not reflect the basis for the not guilty finding.  While Penal Code section 266i is not listed as a sexually violent offense, the remaining three charges are and can support a sexually violent predator finding upon a finding of not guilty by reason of insanity.  (§ 6600, subd. (b).)  Appellant concedes he is not challenging the probable cause finding in this case.

2.

Department of State Hospitals" and "remanded to the custody of the Sheriff of the City and County of San Francisco for transportation to a state hospital pursuant to [section] 6602.5."

On April 3, 2017, appellant appeared before the court facing a petition to compel involuntary treatment with psychotropic medication for a mentally disordered offender patient pursuant to *In re Qawi* (2004) 32 Cal.4th 1 (*In re Qawi*). At that time, the court found that appellant was not "a court adjudicated Mentally Disordered Offender" but rather had been "committed pursuant to [the SVPA] under [section] 6602." The court further found, at that time, that appellant lacked the capacity to refuse treatment and ordered he be involuntarily administered psychotropic medication for a period of time not to exceed one year.

In January 2018, as appellant neared the end of that year of treatment, respondent filed a "Petition for Renewal of an Order to Compel Involuntary Treatment with Antipsychotic Medication *In re Calhoun* (2004) 121 Cal.App.4th 1315." In the petition, respondent alleged appellant had a history of noncompliance with taking medications for his diagnosed mental illness, that he was incompetent to refuse medical treatment, and that he presented a danger to others without medication. Respondent admitted that appellant did not have any significant aggressive, assaultive, or threatening behavior in the past year, a time during which he was medicated, but believed appellant would relapse if his medication was discontinued and noted there were no less intrusive methods to render him nondangerous. Respondent sought to justify the order on the premise appellant was incompetent under *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303 (*Riese*) and such a finding applied to individuals committed pursuant to the SVPA.

Appellant was notified of the petition and appointed counsel to represent him. At the subsequent hearing on March 19, 2018, the court bifurcated the competence and dangerousness issues and proceeded only on whether appellant was competent to refuse

3.

medical treatment. Respondent called Dr. Luyen Luu who provided testimony about appellant's mental condition and treatment. Dr. Luu testified appellant was diagnosed with bipolar disorder and that he showed signs of delusional behavior, such as believing staff are part of the Mafia or the Bulldog gang. Appellant also regularly alleged he was having chest pains or had been raped by staff. He was therefore placed on enhanced observation, where a "sitter" stayed with him. When provided a male sitter he attempted to attack them. When provided a female sitter he masturbated in front of them.

Dr. Luu testified appellant initially claimed not to have a mental illness and not to need medication but was more receptive after being medicated. She further noted appellant has a history of refusing to take his medication and has stated he would not continue taking one of his medications without an order. Although appellant complained of side effects from his medication, Dr. Luu testified to her opinion that the benefits of medication outweighed the side effects. Ultimately, Dr. Luu testified appellant needed to be medicated and that he did not have the capacity to make decisions regarding taking his medication on his own behalf because he would wrongly attribute any improvement to staffing changes rather than to being medicated.

On cross-examination, Dr. Luu agreed appellant seemed to be working with his doctors on treatment options. Testifying on his own behalf, appellant stated the doctors told him he suffered from a mental disorder and that he was perfectly fine until he was placed in situations that caused him to have problems. While he was currently taking his medications, appellant wanted a medication holiday to assist in determining what medications were actually helping him. He claimed the allegations of rape were misconstrued by staff and that the Bulldog and Mafia claims resulted from misunderstanding conversations he overheard.

Following the testimony, the court granted the requested order to compel involuntary treatment on the ground appellant "lacks the capacity to refuse treatment." This appeal timely followed.

4.

## DISCUSSION

Appellant directly challenges the authority of the trial court to order he undergo involuntary medication on the ground he has not been committed to the State Hospital as a sexually violent predator (SVP) under the SVPA. He contends any failure to raise this complaint, if deemed to forfeit the issue on appeal, constitutes ineffective assistance of counsel. As an alternative argument, appellant contends that, should he be considered committed under the SVPA, his commitment is invalid because he has not received due process of law. Relatedly, on the alternative theory appellant is considered committed, he claims he has suffered an equal protection violation because his commitment, authorizing his subsequent medication order, is based on probable cause, not proof beyond a reasonable doubt.

Respondent does not contend appellant qualifies as a SVP under the SVPA, but rather argues *In re Calhoun, supra,* 121 Cal.App.4th (*In re Calhoun*) authorizes involuntary medical treatment of incompetent "civil detainees" who have been admitted to the State Hospital upon a probable cause finding under section 6602. Respondent further contends that its duly authorized regulations permit it to involuntarily medicate civil detainees admitted under section 6602.

After reviewing the briefing in this matter, we requested supplemental briefing on whether the SVPA provides authorization for commitment of those held on probable cause under section 6602.5 and *People v. Ciancio* (2003) 109 Cal.App.4th 175 (*Ciancio*). Appellant argued against such authorization and renews his equal protection argument if authorization is found because the ability to involuntary medicate a patient under the statute depends upon a finding, made beyond a reasonable doubt, that they are a SVP. Respondent argued section 6602.5, as discussed in *Ciancio,* does support its conduct and that appellant's equal protection argument fails by conflating the legal requirements for commitment with the legal requirements for treatment.

5.

Accordingly, we review the issues raised in the context of the legal authority to medicate a person detained under section 6602 but not committed pursuant to section 6604, a distinction that will be more readily understood following a discussion of the SVPA.  Because we conclude authorization exists to medicate a patient detained under section 6602, we do not reach appellant's alternative arguments.

## *Summary of the SVPA*

Section 6600 et seq. sets forth statutory authority and procedures for civilly committing a person designated as a SVP after they have completed a criminal sentence. The legislative history underlying this act shows the Legislature found "a small but extremely dangerous group of [SVP's] that have diagnosable mental disorders can be identified while they are incarcerated.  These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence." (Stats. 1995, ch. 763, § 1, p. 5107.)  The legislation sought "to identify these individuals prior to the expiration of their terms of imprisonment" and "if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, . . . confine[] and treat[] [them] until such time that it can be determined that they no longer present a threat to society." (*Ibid.*)  The Legislature further found "that while these individuals have been duly punished for their criminal acts, they are, if adjudicated [SVP's], a continuing threat to society." (*Ibid.*)  Thus, the Legislature intended "that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (*Ibid.*)

Under the statutory scheme, a SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)  In this context, a diagnosed mental disorder "includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the

person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

In general, at least six months prior to the scheduled release date for a person in custody that "may be a [SVP]," the Department of Corrections and Rehabilitation refers that person for an evaluation. (§ 6601, subd. (a)(1).) The person is first administratively screened, then, if likely to be a SVP, referred for a full evaluation. (§ 6601, subd. (b).) The evaluation is undertaken, in part, by two psychologists or psychiatrists who both must agree the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody." (§ 6601, subd. (d).) If the person meets the relevant criteria, the State Department of State Hospitals requests "a petition to be filed for commitment" no less than 20 calendar days prior to the person's scheduled release. (§ 6601, subd. (h)(1).) Upon a good cause showing, the person's release may be delayed up to 45 days to complete the evaluation process. (§ 6601.3, subd. (a).)

Once the petition for commitment is filed, "a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the court reaches this conclusion from its facial review, it must schedule a probable cause hearing within 10 calendar days. (§ 6601.5.) Such a finding also tolls that person's impending parole "pursuant to paragraph (4) of subdivision (a) of section 3000 of the Penal Code." (§ 6601, subd. (j).)

At the subsequent probable cause hearing, "[a] judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) The person subject to the petition is granted assistance of counsel, but "remain[s] in custody pending the completion of the

7.

probable cause hearing." (§ 6602, subd. (a).) If no probable cause is found, the person is released to complete their period of parole. If probable cause is found, "the judge shall order that the person remain in custody in a secure facility until a trial is completed" and shall order that trial to occur. (§ 6602, subd. (a).)

The statutory scheme prohibits confining the person in the State Hospital "until there has been a determination pursuant to section 6601.3[3] or 6602 that there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior." (§ 6602.5, subd. (a).) The decision to house one held on a probable cause finding at the State Hospital, and to order treatment while that person is there, has been held to be within the discretion of the trial court. (See *Ciancio*, *supra*, 109 Cal.App.4th at p. 197.) This discretionary placement is also important because other case law has found no equal protection violation in the fact that the SVPA does not provide for required treatment prior to the point an accused SVP is committed. (See *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1221.)

One held on probable cause under the SVPA remains in custody until the conclusion of a trial to determine whether they are a SVP. The person is entitled to a trial by jury, the assistance of counsel, the right to retain experts, and access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) If indigent, the court shall appoint counsel. (§ 6603, subd. (a).) The verdict at the trial must be unanimous and reached upon proof beyond a reasonable doubt. (§§ 6603, subd. (f), 6604.) If this standard is not met, the person shall be released at the end of their original sentence or period of parole. If it is met, the person is then "committed for an indeterminate term to the custody of the State Department of State Hospitals for appropriate treatment and

---

**3** It is unclear why the statute refers to section 6601.3 here, as there appears to be no probable cause determination made when one is held beyond their scheduled release date to complete the initial, pre-petition, evaluation.

confinement." (§ 6604.) Notably, there is no required timeframe for completing the commitment trial. (*People v. Talhelm* (2000) 85 Cal.App.4th 400, 407–408.)

Following commitment comes the opportunity for treatment. "A person who is committed under this article shall be provided with programming by the State Department of State Hospitals which shall afford the person with treatment for his or her diagnosed mental disorder. Persons who decline treatment shall be offered the opportunity to participate in treatment on at least a monthly basis." (§ 6606, subd. (a).) Upon adequate improvement under the statutory guidelines, one committed to the State Hospital can be placed in an outpatient treatment program, or either conditionally or unconditionally released. (§§ 6606, 6607, 6608.) Regardless, while committed, a person subject to the SVPA will be evaluated annually. (§ 6604.9.)

### *Standard of Review and Applicable Law*

A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs. (*In re Qawi*, *supra*, 32 Cal.4th at p. 14.) Relatedly, "nonprisoners in California have a statutory right to refuse long-term treatment with psychotropic drugs absent a judicial determination that they are incompetent to do so." (*Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 541.) However, an involuntarily committed patient may be forcibly treated with antipsychotic medication if a court has determined that he is not competent to refuse treatment. (*In re Qawi*, *supra*, 32 Cal.4th at p. 14; *In re Calhoun*, *supra*, 121 Cal.App.4th at p. 1354.)

The superior court shall determine competence to refuse treatment by clear and convincing evidence, "so clear as to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind." (*Conservatorship of Waltz* (1986) 180 Cal.App.3d 722, 733, fn. 14.) A judicial determination of competency to refuse treatment involves consideration of three factors: (1) whether the patient is aware of his situation and acknowledges the existence of his condition; (2) whether the patient understands the benefits and risks of treatment, as well as alternatives to

9.

treatment; and (3) whether the patient is able to understand and evaluate the information required to be given to patients whose informed consent is sought and participate in the treatment decision by rational thought processes. (*Riese*, *supra*, 209 Cal.App.3d at pp. 1322–1323.) "We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence." (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016.)

To the extent the court's authorization to act turns upon statutory interpretation, these principles are well settled. (See *Ciancio*, *supra*, 109 Cal.App.4th at p. 195.) " 'We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning.' [Citation.] We keep in mind that the words of the statute are to be construed in the context of the statutory framework of which the statute is a part, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] 'When the language of a statute is clear, we need go no further.' " (*Stanislaus County Deputy Sheriffs' Assn. v. County of Stanislaus* (2016) 2 Cal.App.5th 368, 376.)

### *The Trial Court's Authority to Order Treatment*

Appellant argues there is no authority to involuntarily medicate a person held on probable cause under the SVPA. According to his argument, *In re Calhoun* only authorizes the involuntary medication of committed SVP's and can only do so because a person committed under the SVPA has been found to satisfy the statutory criteria under the beyond a reasonable doubt standard. While we recognize that neither *In re Calhoun* nor section 6606 provide direct authorization for the involuntary medication of pretrial detainees under the SVPA, *Ciancio* does find statutory authority for treating pretrial detainees in section 6602.5. Moreover, the extensive discussion of the statutory and constitutional rights surrounding involuntary medication contained in both *In re Qawi*

10.

and *In re Calhoun* demonstrate that the court has the authority to order the involuntary medication of a person held over for trial under the SVPA who has been found incompetent to refuse treatment.

We begin with *In re Calhoun* and the statutory authorization for treatment under section 6606. Section 6606 requires the State Hospital provide programming which shall afford a person who is committed to the State Hospital treatment for their diagnosed mental disorder. *In re Calhoun* resolved the question whether persons found to be SVP's and committed to the State Hospital after a trial have the same right to refuse antipsychotic drugs offered as part of their treatment as do mentally disordered offenders. (*In re Calhoun*, *supra*, 121 Cal.App.4th at p. 1322.) Extensively reviewing the rights of citizens, prisoners, mentally disordered offenders, and SVP's, and viewing those rights in the context of the California Supreme Court's similar discussion of the rights of mentally disordered offenders in *In re Qawi*, *In re Calhoun* held that SVP's are entitled to at least the same rights as mentally disordered offenders. (*In re Calhoun*, *supra*, 121 Cal.App.4th at pp. 1343–1354.) According to the *In re Calhoun* court, this means that committed SVP's " 'can be compelled to take antipsychotic medication in a nonemergency situation only if a court, at the time the [SVP] is committed or recommitted, or in a separate proceeding, makes one of two findings: (1) that the [SVP] is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the [SVP] is dangerous within the meaning of . . . section 5300. . . . The rights of [SVP's] to refuse medication can be further limited by State Department of Mental Health Regulations necessary to provide security for inpatient facilities.' " (*In re Calhoun*, *supra*, 121 Cal.App.4th 1322.)[4]

---

[4] We note appellant's counsel's claim, in light of *In re Calhoun*, that he would have identified no error had appellant been committed to the State Hospital under section 6604. Although not relevant here given the finding appellant was incompetent, continued adherence to *In re Calhoun* is questionable with respect to SVP's being medicated because they are a danger to themselves or others. *In re Calhoun* determined that section 5300's authority to forcibly medicate persons that are a threat to themselves or others applied to SVP's because such persons were entitled to at least the same protections as mentally disabled offenders. Its analysis of this

*In re Calhoun's* analysis proceeds on the premise that treatment of committed individuals is mandated by the statutory scheme. As appellant notes, therefore, it is not directly applicable to his situation, as he has not been committed under the relevant statutory scheme. From its starting point, however, *In re Calhoun* traces the historical statutory law, common law, and constitutional rights of citizens, when both voluntarily and involuntarily committed, and when held as prisoners, to reject medical treatment. Consistent throughout this analysis, and equally present in our Supreme Court's similar review in *In re Qawi*, is the recognition that one who is "competent" is entitled to refuse legally permissible medical care absent recognized restrictions on those rights.

As stated in *In re Qawi*, however, the state's *parens patriae* authority creates an interest in the state " 'providing care to its citizens who are unable . . . to care for themselves,' " that "may be used only to impose unwanted medical treatment on an adult when that adult has been adjudged incompetent." (*In re Qawi*, *supra*, 32 Cal.4th at pp. 15–16.) Thus, the counterpoint to the discussion in *In re Calhoun* and *In re Qawi* is that upon a finding of incompetence a person's right to refuse legally permissible medical treatment is constrained. As explained in another context in *Riese*, "absent a judicial

issue, however, turned on the fact the SVPA did not grant SVP's the right to refuse necessary treatment and, in fact, suggested they could not. (*In re Calhoun*, *supra*, 121 Cal.App.4th at pp. 1346–1347.) *In re Calhoun* was decided in 2004. The next year the Legislature amended section 6606 to expressly provide SVP's the right to decline treatment. (Stats. 2005, ch. 80, § 20, pp. 1458–1459.) Further amendments to section 6605 in 2006 and 2009 allowed a SVP's refusal to participate in treatment to be used as proof their condition had not changed and, thus, as a basis not to release them from their indeterminate commitments under the SVPA. (Stats. 2006, ch. 337, § 57, p. 2181; Stats. 2009, ch. 61, § 1, pp. 303–304.) Such changes appear to undercut *In re Calhoun's* determination that "if the Legislature had intended to grant SVP's the right of state prisoners, [Lanterman-Petris-Short Act] patients, and [mentally disordered offenders] to refuse antipsychotic medication, it would have expressly done so in the SVPA." (*In re Calhoun*, *supra*, 121 Cal.App.4th at pp. 1346–1347; see also *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1167 [provision relied upon by *In re Calhoun* court to impliedly deny competent SVP's the right to refuse antipsychotic medication in nonemergencies "appears to stand for the unremarkable proposition that some mentally disordered and dangerous persons might not benefit from treatment for a variety of reasons, and that commitment is not foreclosed in those cases"].)

determination of incompetence, antipsychotic drugs cannot be administered" without the informed consent of one who is being involuntarily treated under the Lanterman-Petris-Short Act, the legal framework expounding the rights of mentally ill citizens not subject to other penal or societal safety interests. (*Riese*, *supra*, 209 Cal.App.3d at p. 1320.)

To ensure the right to refuse medication is protected, a judicial determination of incapacity based on clear and convincing evidence following an evidentiary hearing is required before involuntary medication is permitted. (*Riese*, *supra*, 209 Cal.App.3d at p. 1322.) This fundamental concept, equally recognized with respect to prisoners, mentally disordered offenders, and SVP's in *In re Calhoun*, and those that are mentally ill but not confined in *Riese*, does not arise from the express holdings of *In re Calhoun* but from the long-standing common law and statutory schemes discussed. Accordingly, to the extent appellant is subject to legally permissible medical treatment from the State Hospital, a proper adjudication of his competence can result in the removal of his right to refuse such treatment without violating his due process or equal protection rights due to the fact he was not committed under a finding he was a SVP beyond a reasonable doubt.

The question therefore becomes, under what authority may the State Hospital provide treatment for a person held over for trial under the SVPA? As noted, mandatory treatment is required upon commitment to the State Hospital pursuant to section 6606. Further, absent a judicial decision to send appellant to the State Hospital, a probable cause finding under section 6602 results in one subject to the SVPA "remain[ing] in custody in a secure facility." This secure facility is, necessarily, the one currently housing the person subject to the SVPA who, as noted above, is nearing their normal release date and, therefore, is, as noted in the statute, within the control of the Department of Corrections and Rehabilitation.

*Ciancio* resolves this question. In *Ciancio*, several persons alleged to be SVP's under the SVPA, some of whom had undergone a probable cause hearing, were being detained pending trial in the county jail in Los Angeles. (*Ciancio*, *supra*, 109

13.

Cal.App.4th at pp. 180–181.) These individuals sought the housing and treatment that would be provided once they were found to be SVP's during the period they waited for their trial. (*Id.* at p. 181.) The *Ciancio* court began by explaining that although there was no constitutional right for pre-commitment treatment for alleged SVP's, there was also no bar to such treatment provided it was afforded by state law. (*Id.* at p. 195.) The court further recognized that no "statute which *mandates* treatment for alleged SVP's prior to trial" had been identified. (*Id.* at p. 196.) However, in reviewing the statutory scheme, the court found that "[f]or those alleged SVP's who have had a probable cause determination, section 6602.5, subdivision (a) . . . *permits* the trial court to order them to a state hospital, which is a therapeutic environment where treatment is provided." (*Ciancio*, at p. 196.) "Accordingly, by virtue of its discretion to place an alleged SVP in a state hospital after a probable cause determination, the trial court also has the discretion to order treatment." (*Ibid.*)

Under *Ciancio*, the trial court had the discretion to send appellant to the State Hospital following its probable cause determination and, relevant to that right, maintained the discretion to order treatment at the State Hospital while appellant was there. The record demonstrates that appellant was transferred to the State Hospital pursuant to section 6602.5. Once there, the State Hospital requested and received a judicial determination that appellant was incompetent to refuse medical treatment based on his severe mental illness and later sought to renew that determination after a year had passed. The court's discretionary authority to send appellant to the State Hospital and to receive treatment following the probable cause determination necessarily included the authority and responsibility to determine appellant's competence should he refuse that treatment. (See *Riese*, *supra*, 209 Cal.App.3d at p. 1321 ["Consequently, the task for the court is simply to determine whether a patient refusing medication is competent to do so despite his or her mental illness. The determination of this capacity 'is uniquely a judicial, not a medical function' "].)

We therefore conclude that, although appellant has not been committed to the State Hospital, the trial court has the discretionary authority under section 6602.5 to order his involuntary medication upon a proper finding he is incompetent to refuse medical treatment. We see no indication in the record the court failed to follow the proper procedures for reaching that determination in this instance. Appellant, represented by counsel, was provided with a full evidentiary hearing on the request, at which he could call and cross-examine witnesses and generally test the government's evidence. The court was apprised of the relevant factors for determining competence and the trial court expressly found appellant lacked the capacity to refuse treatment. Appellant does not contest this ruling on substantial evidence grounds and his assertion of an equal protection violation fails because appellant, having been adjudged incompetent under *In re Calhoun's* standards, is not being treated differently for the purposes of medication decisions under the relevant statute than committed SVP's. (See *People v. Morales* (2016) 63 Cal.4th 399, 408 [" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." ' "] italics omitted.)

## DISPOSITION

The order is affirmed. Appellant's request for judicial notice filed on April 25, 2018, is denied as moot.

HILL, P.J.

WE CONCUR:

_____
POOCHIGIAN, J.

_____
SMITH, J.

15.

Filed 1/15/19

**<u>CERTIFIED FOR PUBLICATION</u>**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS, | F077220 |
| Plaintiff and Respondent, | (Fresno Super. Ct. No. 18CRAD684104) |
| v. | |
| J.W., | **ORDER GRANTING REQUEST FOR PUBLICATION** |
| Defendant and Appellant. | |


As the nonpublished opinion filed on December 19, 2018, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is hereby ordered that the opinion be certified for publication in the Official Reports.


HILL, P.J.

WE CONCUR:


POOCHIGIAN, J.


SMITH, J.